STATE, Appellant, *v.* CUDAHY PACKING CO. et al., Respondents.

(No. 2,219.)

(Submitted November 6, 1905.   Decided November 17, 1905.)

*Anti-trust   Legislation—Validity—Constitutional   Law—Equal Protection of the Laws—Statutory Construction.*

Federal Constitution—Interpretation by Federal Supreme Court—Binding upon State Courts.
    1.   The Constitution of the United States is, within the scope of its provisions, the supreme law of the land, and state courts and legislatures are bound by it as well as by the interpretation put upon its provisions by the federal supreme court.
Anti-trust Legislation—Constitutional Law.
    2.   Section 321 of the Penal Code, prohibiting the formation of combinations or trusts for the purpose of fixing the price or regulat-

ing the production of articles of commerce, and prescribing penalties for violations thereof, is, by reason of the provisions of section 325 of the same Code, to the effect that such prohibition shall not apply to persons engaged in agriculture and horticulture, obnoxious to that portion of the Fourteenth Amendment to the federal Constitution which declares that "no state shall deny to any person within its jurisdiction the equal protection of the laws," and both sections, being dependent upon each other, are therefore void.

Statutory Construction—Elimination.

3.   Courts may not, by process of elimination, make statutory provisions apply or extend to subjects not falling clearly within their terms.

Statutory Construction—Meaning of Words Used.

4.   Where the intention of the legislature may be inferred from the plain meaning of the words of a statute, the court cannot go further and apply other means of interpretation, it being only where there is a doubt as to the intention that other rules may be applied.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

INFORMATION by the state against the Cudahy Packing Company and others.   From a judgment for defendants, the state appeals.   Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Appellant.

It is well settled by numerous decisions of the supreme court of the United States that the construction and meaning of a state law, adopted by the supreme court of the state, will be accepted by the United States supreme court, provided the state law, as so construed by the state court, is not in violation of any provision of the Constitution of the United States.   If the exemptions attempted to be made by section 325, Penal Code, are surplusage, void or invalid, under section 20, Article XV, of our Constitution, and if this court should hold that the enactment of a void or invalid exemption in direct violation of a constitutional provision is not in law to be considered as an inducement for the enactment of a valid law, pursuant to a mandatory provision of the Constitution, then the valid portion of the law would stand as if no exemption therefrom had ever been attempted.   Under such a construction section 321, Penal Code, would be constitutional and would not be in conflict with any portion of the United States Constitution.   (*Waters-Pierce Oil*

*Co.* v. *Texas,* 177 U. S. 42, 20 Sup. Ct. 518, 44 L. Ed. 663;
*Tullis* v. *Lake Erie etc. R. R. Co.,* 175 U. S. 348, 20 Sup. Ct.
136, 44 L. Ed. 192.)

*Mr. M. S. Gunn,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion
of the court.

The respondents were charged by information, filed by the at-
torney general in the district court of Lewis and Clark county,
with the crime of conspiracy, under section 321 of the Penal
Code.   The charge in substance is that the respondents did on
or about December 1, 1904, unlawfully agree and combine to-
gether to fix and control the price of certain articles of com-
merce consumed by the people of the state of Montana, and to
destroy competition by restricting trade therein, to wit, meats
of all kinds and meat products, and did then and there fix the
price and offer for sale, and sell, said articles to the people of
said county contrary to the force and effect of the statute, etc.
The respondents demurred to the information on the ground
that the facts stated do not constitute a public offense.   After
argument the court allowed the demurrer, and gave judgment
accordingly.   Thereupon the state appealed.

The question submitted for decision is whether the legislation
contained in Chapter VIII, Title VII, of Part I, of the Penal
Code, of which said section 321 is a part, is obnoxious to that
portion of the Fourteenth Amendment to the Constitution of
the United States which declares that ''no state shall   *   *   *
deny to any person within its jurisdiction the equal protection
of the laws.''   The legislation referred to deals with the subject
of criminal conspiracy, denouncing the acts constituting the
crime and providing for its punishment.   The portions thereof
involved here are sections 321 and 325, as follows:

''Sec. 321.   Every person, corporation, stock company, or as-
sociation of persons in this state who, directly or indirectly, com-
bine or form what is known as a trust, or make any contract
with any person or persons, corporations or stock companies,

foreign or domestic, through their stockholders, directors, officers, or in any manner whatever, for the purpose of fixing the price or regulating the production of any article of commerce, or of the product of the soil for consumption by the people, or to create or carry out any restriction in trade, to limit productions, or increase or reduce the price of merchandise or commodities, or to prevent competition in merchandise or commodities, or to fix a standard or figure. whereby the price of any article of merchandise, commerce or produce, intended for sale, use or consumption, will be in any way controlled, or to create a monopoly in the manufacture, sale or transportation of any such article, or to enter into an obligation by which they shall bind others or themselves not to manufacture, sell, or transport any such article below a common standard or figure, or by which they agree to keep such article or transportation at a fixed or graduated figure, or by which they settle the price of such articles, so as to preclude unrestricted competition, is punishable by imprisonment in the state prison not exceeding five years or by a fine not exceeding ten thousand dollars, or both. Every corporation violating the provisions of this section, forfeits to the state all its property and franchises, and in case of a foreign corporation it is prohibited from carrying on business in the state."

"Sec. 325. The provisions of this chapter do not apply to any arrangement, agreement or combination between laborers made with the object of lessening the number of hours of labor or increasing wages, nor to persons engaged in horticulture or agriculture, with a view of enhancing the price of their products."

These provisions are the result of an effort on the part of the legislature to carry out the mandate of the Constitution of this state, which declares: "No incorporation, stock company, person or association of persons in the state of Montana, shall directly, or indirectly, combine or form what is known as a trust, or make any contract with any person, or persons, corporations, or stock company, foreign or domestic, through their stockholders, trustees, or in any manner whatever, for the purpose of fixing the

price, or regulating the production of any article of commerce, or of the product of the soil, for consumption by the people. The legislative assembly shall pass laws for the enforcement thereof by adequate penalties to the extent, if necessary for that purpose, of the forfeiture of their property and franchises, and in case of foreign corporations prohibiting them from carrying on business in the state.'' (Constitution, Art. XV, sec. 20.)

The contention made by respondents in the district court and here is that the exception contained in section 325, by which the provisions of section 321 are declared not to apply to persons engaged in horticulture and agriculture, renders the provision of section 321 unconstitutional. The language of the last clause of this section is vague and indefinite; but, reading the whole section together, this clause should be construed to read as follows: ''Nor to any arrangement, agreement or combination made by persons engaged in horticulture or agriculture, with a view of enhancing the price of their products.'' The obvious purpose of the legislature was to except from the operation of section 321 devices which might be resorted to by horticulturists and agriculturists to enhance the value of their products and destroy competition in trade therein when they came to put them upon the market.

The attorney general does not seriously controvert the proposition that the legislation as it stands is open to the constitutional objection urged against it, but he insists that since the provisions of the Constitution of the state are mandatory, and since the legislature has declared in section 321 generally against every species and character of combination denounced therein, section 325 can be held inoperative, leaving section 321 to stand in full force. In this connection he suggests, also, that neither the provisions of section 321 nor those of the Constitution by any intendment can include labor organizations; and that, so far as section 325 refers to this character of combinations, it is simply nugatory, and a disregard of it will not extend or affect the provisions of section 321.

It is clear that, if this section of the state Constitution does not apply to combinations of laborers for the purposes stated, no

exception was necessary to exempt them, for section 321, *supra,* is no more specific in its terms than is the section of the Constitution; and, if the phrases "articles of commerce" and "products of the soil" in the former do not apply to or include them, neither do they, nor the terms "trade," "merchandise," and "commodities," as used in the latter, include them. But an inquiry into the question thus suggested is not now pertinent. Nor is it necessary to inquire into the question, also suggested, whether this exception does in itself render the legislation obnoxious to the provision of the federal Constitution invoked by respondents. Nor, again, is it necessary to inquire whether the legislation is, by reason of any exception stated in it, obnoxious to any provision of our state Constitution.

The Constitution of the United States is, within the scope of its provisions, the supreme law of the land, and state courts and legislatures are bound by it as well as by the interpretation put upon its provisions by the federal court of last resort. In the cases of *Connolly and Dee* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the court had before it the identical question presented in this case. In these cases the supreme court of the United States considered the validity of the trust statute of Illinois of 1893. That Act in terms prohibited combinations of capital, skill, or acts by two or more persons, firms, corporations, or associations of persons, or any of them, for any or all of the following purposes: To restrict trade; to limit production, or to fix the price of merchandise or of commodities; to prevent competition in manufacture, transportation, sale, or purchase of any product of industry; to fix or control prices, or to establish any agency for that purpose; or to make or enter into any contract or agreement by which the parties should bind themselves not to sell, dispose of, or transport any article of trade below a common standard figure or card or list price, or any contract or agreement to keep the price of any such article or its transportation at such fixed price, in order to prevent free and unrestricted competition. Severe penalties were provided for the violation of any of its provisions. The ninth section of the Act provided: "The provisions of this Act

shall not apply to agricultural products or livestock while in
the hands of the producer or raiser.'' The tenth section de-
clared that any purchaser of any article or commodity from any
person, firm, or corporation, or association of persons doing
business in the state contrary to any of the provisions of the
Act should not be liable for the price of such article, and might
plead the Act as a defense to any suit for the price.

The Union Sewer Pipe Company brought its action in the
circuit court of the United States for the northern district of
Illinois against the plaintiffs in error to recover the price of
certain sewer pipe sold by it to them. After alleging that the
corporation was a combination in the form of a trust, and was
engaged in conducting its business in Illinois in violation of the
statute, they relied, among other defenses, upon the provisions
of section 10 of the statute to defeat the company's claim. The
circuit court held the Act to be in violation of the above pro-
vision of the federal Constitution. Upon error to the supreme
court, that court, after a full discussion of its former decisions
defining the meaning of the portion of the amendment in ques-
tion, declared that the Act was rendered void by this exception
from its operation of persons engaged in agriculture and raising
of livestock. The court states its conclusion thus: ''We conclude
this part of the discussion by saying that to declare that some of
the class engaged in domestic trade or commerce shall be deemed
criminals, if they violate the regulations prescribed by the state,
for the purpose of protecting the public against illegal combin-
ations formed to destroy competition and to control prices, and
that others of the same class shall not be bound to regard those
regulations, but may combine their capital, skill, or acts to
destroy competition and to control prices for their special ben-
efit, is so manifestly a denial of the equal protection of the laws
that further or extended argument to establish that position
would seem to be unnecessary.''

The court, in discussing the meaning of this provision of the
Constitution, cites with approval the case of *Barbier* v. *Connolly*,
113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, in which Mr.
Justice Field uses this language: ''The Fourteenth Amendment,

in declaring that no state 'shall deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.''

The court also cites with approval the case of *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, in which it was said that ''the equal protection of the laws is a pledge of the protection of equal laws,'' herein declaring, in substance, that not only must the law as enacted furnish equal protection to all, but also that the legislature, in enacting any law, must so adjust its provisions that it will operate equally upon the individuals constituting the class of citizens whose conduct it is intended to control. In the Illinois Act the exception applies to agriculturists and livestock raisers. The exception in our statute applies to those engaged in agriculture and horticulture; but this slight difference does not affect the point at issue.

Though there might be differences of opinion as to the proper interpretation of the Fourteenth Amendment, if it were a new question, these decisions of the court of last resort are binding upon this court, and, under the mandate of the Constitution of the United States, are the supreme law of the land. Accepting

them as such, we must conclude that the legislation is void, unless section 325 can be eliminated, leaving section 321 in operation.

In the cases of *Conolly and Dee* v. *Union Sewer Pipe Co., supra,* the supreme court of the United States also considered the question whether or not the Act under consideration could be held operative by eliminating the ninth section thereof, which makes the exception of the class of persons engaged in agriculture and stock raising. The court stated the rule to be that, "if different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire statute must be held inoperative." The court then proceeds to discuss the other provisions of the Act, and concludes that, to eliminate the ninth section and sustain the other provisions, would make the Act apply to agriculturists and livestock raisers—a result not contemplated by the legislature, since by the terms of the rest of it, all persons engaged in domestic trade were included. This is a recognition of the soundness of the proposition that the courts may not by process of interpolation or elimination make statutory provisions apply or extend to subjects not falling clearly within their terms; for by so doing they would to this extent usurp the functions of the lawmaking department of the government. Mr. Justice Harlan, in the opinion says: "If the latter section be eliminated as unconstitutional, then the Act, if it stands, will apply to agriculturists and livestock dealers. Those classes would in that way be reached and fined, when, evidently, the legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill, or acts in respect of their products or stock in hand."

In *United States* v. *Reese et al.,* 92 U. S. 214, 23 L. Ed. 563, the court had before it the statute of Congress enacted May 31, 1870 (16 Stat. 140, c. 114), for the purpose of carrying into effect the provisions of the Fifteenth Amendment to the Consti-

tution of the United States, declaring that the right of citizens of the United States to vote shall not be denied or abridged on account of race, color or previous condition of servitude, and that Congress shall have power to enforce this Article by appropriate legislation. The third and fourth sections of the Act went beyond the purview of the amendment, and denounced as a crime any act by which a voter was deprived of his right to vote, whether on account of race, color, or previous condition of servitude or for other cause. It was held that the Act was not legislation appropriate to carry the amendment into effect, because it was broader in its terms than the amendment authorized, and was therefore unconstitutional; and, further, that the court could not reject the part which was invalid and retain the part which fell within the power of Congress, because the Act must be taken as a whole. The court, speaking through the chief justice, said: ''The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute, so as to make it specific, when, as expressed, it is general only. It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.''

So in *Spraigue* v. *Thompson*, 118 U. S. 90, 6 Sup. Ct. 988, 30 L. Ed. 115, the argument was made that certain unauthorized exceptions made by a statute of the state of Georgia could be eliminated and the rest be allowed to stand. The supreme court of Georgia had so held, but the court said: ''But the insuperable difficulty with the application of that principle of construction to the present instance is that, by rejecting the exceptions intended by the legislature of Georgia, the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in

view of the illegality of the exceptions.'' The following cases
are in point, and illustrate the application of the rule: *Pollock*
v. *Farmers' Loan & Trust Co.,* 158 U. S. 601, 15 Sup. Ct. 912,
39 L. Ed. 1108; *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 Sup.
Ct. 903, 29 L. Ed. 185; *Johnson* v. *State,* 59 N. J. L. 535, 37
Atl. 949, 39 Atl. 646, 38 L. R. A. 373; *Ames et al.* v. *People,*
25 Colo. 508, 55 Pac. 725; *State ex rel. McHugh* v. *Sheriff,* 48
Minn. 236, 31 Am. St. Rep. 650, 51 N. W. 112; *Kellyville
Coal Co.* v. *Harrier,* 207 Ill. 624, 99 Am. St. Rep. 240, 69 N.
E. 927; *Union County Nat. Bank* v. *Ozan Lumber Co.* (C. C.),
127 Fed. 206; *In re Wong Hane,* 108 Cal. 680, 49 Am. St. Rep.
138, 41 Pac. 693.   See, also, Cooley's Constitutional Limitations,
7th ed., 246 et seq.

Applying it to the statute now under consideration, the query
is presented: Are sections 321 and 325 so independent of each
other that the latter may be eliminated and the former be al-
lowed to stand? To this query, we think the answer must be
in the negative. The legislature in passing the law was at-
tempting to make effective the provision of the constitution.
This provision applies to every species of combination to control
prices of products of the soil or manufacture consumed by the
people of this state, or to create a monopoly in such products.
The mandate to the legislature is, that it shall enforce the pro-
vision by appropriate legislation. The legislation is, therefore,
the scheme adopted for that purpose. It is not supposable that
it would have been enacted without the limitation contained in
section 325. It must therefore be taken as a whole, and stand
as it is, or both provisions must fall together. As it stands,
agriculturists and horticulturists, though engaged in domestic
trade, are not subject to any penalty. If the exception be elim-
inated and section 321 be allowed to stand, they will fall within
the reach of the criminal courts and be punishable as crim-
inals—not by intention of the law-making power as expressed
in the enactment, but by virtue of arbitrary legislation by the
court.

But the attorney general insists that this court has already
committed itself to the view he contends for by the decision in

*Northwestern Mutual Life Insurance Co.* v. *Lewis and Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982. With this argument we do not agree.    We think that case clearly distinguishable from this in two important particulars.    This case involves the construction of a statute highly penal.    To such statutes the strict rule is to be applied—not so strict as to defeat the plain intent of the legislature, but so strict as to give the words of the statute the sense in which they are obviously used.    (*United States* v. *Reese et al., supra.*)    If, applying this rule, the legislative intent cannot be given effect, the particular law must fail.    In other words, it must stand as enacted, or must be declared void as a whole.    (*Wynehamer* v. *People,* 13 N. Y. 378.)    Again, the court had under consideration section 681 of the Civil Code, which imposed a tax upon the excess of premiums collected by insurance companies doing business in this state.    This section also contains an exemption of the personal property of such companies.    It was held that the exemption clause was so far independent of the other provisions of that section that it could be eliminated without affecting the rest of the  section or extending its application.    From this point of view the case is not applicable.

It is also said that the legislation under consideration was enacted under a mandatory constitutional provision prohibiting combinations in the form of trusts in this state, whereas in Illinois there was no such provision; and for this reason the cases of *Connolly and Dee* v. *Union Sewer Pipe Co., supra,* are distinguishable from the case at bar.    This argument proceeds upon the assumption that the legislature intended to enact a constitutional law, but having failed to do so, this court may give effect to this intention by holding section 325 void and allowing 321 to stand.    This is but another way of putting the question which we have already considered and decided.

The intention of any legislation must be inferred in the first place from the plain meaning of the words used.    If this intention can be so arrived at, the courts may not go further and apply other means of interpretation.    It is only where there is a doubt as to the intention that other rules may be applied.

This statute is clear and certain as to its intention, and that intention, as expressed, is to except from the operation of section 321 persons engaged in agriculture and horticulture.

We can see no sound distinction between a case where Congress has gone beyond the limit of power conferred upon it by the Constitution of the United States, as was the case in *United States* v. *Reese et al.,* and a case like the present, where the legislature has stopped short of the plain mandate of the state Constitution, and made exceptions which are unauthorized; nor between a case where the legislature is undertaking to give effect to the mandate of a Constitution and within limitations prescribed thereby, and a case where the legislature acts without constitutional restriction in an endeavor to give effect to the will of the people.

The result is that sections 321 and 325 are so dependent upon each other that both must fall. Nothing said herein, however, must be construed as affecting the constitutionality of the other provisions of the chapter of the Code of which these sections are a part.

The judgment of the district court is correct and is affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY, concur.