CITY OF BILLINGS, RESPONDENT, *v.* COOK ET AL., APPELLANTS.

(No. 2,354.)

(Submitted January 16, 1907. Decided February 5, 1907.)

(88 Pac. 656.)

*Municipal Corporations—Livery-stables—Ordinances—Validity—Equal Protection of the Laws.*

1. Defendants had practically completed a building for livery-stable purposes within a resident portion of a city at an outlay of about $2,600, before an ordinance was passed making it incumbent upon persons desiring to engage in such business to first obtain a permit. The ordinance also provided that it should not apply to any livery-stable then in existence in the city limits. The defendants, having failed to

obtain such permit, were found guilty and a fine imposed upon each of them. *Held,* that the ordinance was an unlawful discrimination between defendants and others engaged in the same business at the time of its enactment, contrary to the provisions of the fourteenth amendment to the Constitution of the United States insuring to all the equal protection of the laws, and therefore inoperative as to defendants.

*Appeal from District Court, Yellowstone County; Charles H. Loud, Judge.*

J. F. Cook and B. M. Cox were convicted of violating an ordinance of the city of Billings, and appeal. Reversed and remanded.

*Mr. W. M. Johnston,* for Appellants.

The ordinance in question is invalid because it attempts to delegate the powers of the city council to certain real estate owners in the city of Billings, which is an unlawful delegation. (*City of St. Louis* v. *Russell,* 116 Mo. 248, 22 S. W. 470, 20 L. R. A. 721.) An ordinance prohibited marching on the streets except by the consent of the mayor or council. It was held invalid as unreasonable and leaving the power to unregulated official discretion. (*Frazee's Case,* 63 Mich. 396, 6 Am. St. Rep. 310, 30 N. W. 72; *Anderson* v. *City of Wellington,* 40 Kan. 173, 10 Am. St. Rep. 175, 19 Pac. 719, 2 L. R. A. 110; *City of Chicago* v. *Trotter,* 136 Ill. 430, 26 N. E. 359.) The city council cannot by ordinance delegate its powers. (1 Smith on Municipal Corporations, sec. 531·(m), secs. 286-289; Cooley's Constitutional Limitations, 7th ed., 293. See, also, *Ex parte Sing Lee,* 96 Cal. 354, 31 Am. St. Rep. 218, 31 Pac. 245, 24 L. R. A. 195; *In re Quong Woo,* 13 Fed. 229, 7 Saw. 526; *In re Christensen,* 43 Fed. 243; *State* v. *Mahner,* 43 La. Ann. 496, 9 South. 480; *State* v. *Dubarry,* 44 La. Ann. 1117, 11 South. 718; *City of Newton* v. *Belger,* 143 Mass. 598, 10 N. E. 464; *City of Richmond* v. *Dudley,* 129 Ind. 112, 28 Am. St. Rep. 180, 28 N. E. 312, 13 L. R. A. 587; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; *City of Brooklyn* v. *Furey,* 9 Misc. Rep. 193,

30 N. Y. Supp. 349; *State* v. *Tenant,* 110 N. C. 609, 28 Am. St. Rep. 715, 14 S. E. 387, 15 L. R. A. 423; *Barthet* v. *City of New Orleans,* 24 Fed. 563.)

The ordinance is invalid for the reason that it is an unlawful discrimination between these appellants, whose livery-stable was partially completed at the time of the passage of the ordinance and the owners of other livery-stables in residence districts of the city whose buildings were actually completed and in use at the time of the passage of this ordinance. It is in the nature of an *ex post facto* law, decreases the value of appellant's property and is an unfair discrimination. As to the appellants, under the agreed statement of facts, the ordinance in question is a violation of the fourteenth amendment to the Constitution of the United States and of sections 3, 14 and 27 of Article III of the Constitution of Montana.

As soon as appellants had entered upon the construction of the buildings and incurred expense for the work and materials, they had a property interest in them. In this they were entitled to protection. (*City of Buffalo* v. *Chadeayne,* 134 N. Y. 163, 31 N. E. 443; *People* v. *O'Brien,* 111 N. Y. 1, 7 Am. St. Rep. 648, 18 N. E. 692-697, 707-709, 2 L. R. A. 255; *In re Union El. Ry. Co.,* 112 N. Y. 661, 19 N. E. 664-670; *City of Detroit* v. *Detroit etc. Plank-road Co.,* 43 Mich. 140, 5 N. W. 275-280; 1 Smith on Municipal Corporations, sec. 610; *Hawes* v. *City of Chicago,* 158 Ill. 653, 42 N. E. 373, 30 L. R. A. 225.)

An ordinance which allows a certain business to be carried on in buildings already erected, but prohibits the erection of others for that purpose, is unreasonable and therefore void. (Cooley's Constitutional Limitations, 7th ed., 282, 283; *Town of Crowley* v. *West,* 52 La. Ann. 526, 78 Am. St. Rep. 355, 27 South. 53, 47 L. R. A. 652; *Austin* v. *Murray,* 33 Mass. (16 Pick.) 121; *City of Shreveport* v. *Robinson,* 51 La. Ann. 1314, 26 South. 277; *In re Christensen, Barthet* v. *City of New Orleans, In re Quong Woo, City* v. *Tenant, supra.*) A livery-stable is not a nuisance *per se.* (*City of St. Louis* v. *Russell, Town of Crowley* v. *West, supra.*) The ordinance is unreason-

able, oppressive and repugnant to fundamental rights of the appellant, is partial and unfair, and makes special and unwarranted discriminations between these appellants and other citizens of Billings, and for that reason is invalid.    (1 Smith on Municipal Corporations, 95; *Phillips* v. *Denver,* 19 Colo. 179, 41 Am. St. Rep. 230, 34 Pac. 902; *Tugman* v. *Chicago,* 78 Ill. 405; *City of Lake View* v. *Tate,* 130 Ill. 247, 6 L. R. A. 268, 22 N. E. 791.)

*Mr. Harry A. Groves,* for Respondent.

The ordinance in question does not delegate to a majority of the lot owners the right to pass, or even approve of it.    On the contrary, their consent is in the nature of a condition subsequent which may defeat the operation of the prohibition against the location of a livery-stable in a block where one-half of the buildings are devoted to exclusive residence purposes, but which was never intended to confer upon the ordinance validity as an expression of the legislative will.    (*City of Chicago* v. *Stratton,* 162 Ill. 494, 44 N. E. 855; *In re O'Brien,* 29 Mont. 530, 75 Pac. 196.)    In determining the question of the location of a livery-stable, the common council may properly consult the wishes and ascertain the needs of the residents of the block where the stable is to be kept, and to that end their written consent may be made the basis of their action in issuing the permit.    In matters of purely local concern the parties immediately interested may fairly be supposed to be more competent to judge of their needs than any central authority.    (*City of Chicago* v. *Stratton,* 162 Ill. 494, 44 N. E. 855.)

Classification to relieve a law from the charge of a denial of equal protection cannot be made arbitrarily, but must be based upon some difference which bears a just and proper relation to the attempted classification.    (*Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666.)    Classification only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate

equally and uniformly upon all persons in similar circumstances. (*City of Butte* v. *Paltrovich,* 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521; *In re Inman,* 8 Idaho, 398, 69 Pac. 120; *Magoun* v. *Illinois etc. Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Hawker* v. *State of New York,* 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002; *Dent* v. *State of West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 624; *Clark* v. *Titusville,* 184 U. S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569; Sutherland on Statutory Construction, c. 6.)

When the legislature expressly authorizes a municipality to pass any certain ordinance, that ordinance will be upheld, regardless of the opinion of the court as to its reasonableness or unreasonableness. (Smith on Municipal Corporations, sec. 525.)

A livery-stable in close proximity to an existing residence may be injurious to the comfort and even health of the occupants by the permeation of deleterious gases, and the near deposit of offal removed therefrom. (*City of Chicago* v. *Stratton,* 162 Ill. 494, 44 N. E. 855; *Fischer* v. *St. Louis,* 194 U. S. 361, 24 Sup. Ct. 673, 48 L. Ed. 1018.) The police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state; and persons and property are subject to all kinds of restraint and burdens in order to secure the general comfort, health, and prosperity within the state. (*Slaughter-house Cases,* 16 Wall. 36, 21 L. Ed. 404; *Lawton* v. *Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; *Holden* v. *Hardy,* 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780.)

The exercise of the police power often works pecuniary injury, but the mere fact of pecuniary injury does not warrant the overthrow of legislation of a police character. (*L'Hote* v. *New Orleans,* 177 U. S. 587, 20 Sup. Ct. 788, 44 L. Ed. 899; *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 24 L. Ed. 1036; *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Lawton* v. *Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385.)

The fact that, prior to the adoption of an ordinance precluding the erection or maintenance of gas-works, plaintiff had commenced to erect works under a permit of the board of fire commissioners of the city, did not constitute an express contract by the city to allow plaintiff to erect and maintain the works. The city could not thus estop itself from making and enforcing proper police regulations. (*Dobbins* v. *City of Los Angeles*, 139 Cal. 179, 96 Am. St. Rep. 95, 72 Pac. 970; *State* v. *Johnson*, 114 N. C. 846, 19 S. E. 599; *Knoxville Corp.* v. *Bird*, 12 Lea (Tenn.), 121, 47 Am. Rep. 326.) Persons in contemplation of law contract with reference to the existence and possible exercise of this authority, and it is vested in the municipality. (*State* v. *Johnson*, 114 N. C. 846, 19 S. E. 599; *Knoxville Corp.* v. *Bird*, 12 Lea (Tenn.), 121, 47 Am. Rep. 326.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from the judgment of the district court of Yellowstone county, finding the appellants guilty of a violation of Ordinance No. 223 of the city of Billings, and imposing a fine upon each of them.

The action was begun in the police court upon a complaint, which is as follows: "That on or about the twelfth day of April, A. D. 1906, within the corporate limits of the city of Billings, in the county of Yellowstone, state of Montana, the defendants committed the crime of unlawfully maintaining, conducting, and operating a livery-stable in that the said J. F. Cook and B. M. Cox, then and there being, did, then and there, without first obtaining a permit from the city council of said city, maintain, conduct and operate a livery-stable on lots numbered thirteen (13) and fourteen (14) of block numbered one hundred and five (105) of the original town (now city) of Billings, Montana, according to the official plat thereof now on file and of record in the office of the county clerk and recorder of Yellowstone county, Montana, the majority of the buildings situated on said block, then and there, being residences, contrary to the pro-

visions of the ordinance of the said city of Billings, in such cases made and provided, No. 223, entitled: 'An ordinance regulating the location of livery-stables within the corporate limits of the city of Billings.' "

From a judgment of conviction in the police court the defendants appealed to the district court, where the cause was tried by the court, without a jury, upon an agreed statement of facts, the material portions of which are:

"(5) That   *   *   *   on or about the twentieth day of February, 1906, said defendants did acquire and purchase at a cost of $1,100 lots numbered thirteen and fourteen in block numbered one hundred five of the original town, now city, of Billings, and which is within the corporate limits of said city and within the residence district of said city, the majority of the buildings situate in said block being residences.

"(6) That immediately after acquiring and purchasing said lots said defendants began the construction of a livery-stable 50 feet in width by 130 feet in depth, said lots being in the aggregate 50 feet in width and 140 feet deep; that said defendants constructed a foundation for said livery-stable at a cost of $75.25, and made water and sewer connections therefor at a cost of $195.00, and in addition thereto, in the construction of said livery-stable expended the sum of $20.00 for hardware, $955.00 for lumber and $214.00 for labor prior to the 6th day of March, 1906; and that on the 6th day of March, 1906, said defendants had a total sum of $2,609.25 invested in said lots and in said livery-stable so partially constructed as aforesaid.   *   *   *

"(8) That said livery-stable, with the exception of the painting thereof was practically finished and completed on the 12th day of April, 1906, at an approximate cost of $3,500, exclusive of the cost of lots, and that when finally completed and painted will cost said defendants about $4,000.

"(9) That on the 6th day of March, 1906, at the request of certain property owners living in the city of Billings, the city council of said city passed Ordinance No. 223, which ordinance

was on that day approved by the mayor of said city, and is in words and figures following, to-wit:

" 'Ordinance No. 223.

" 'An Ordinance Regulating the Location of Livery-stables within the Corporate Limits of the City of Billings.

" 'Be it ordained, by the city council of the city of Billings:

" 'Section 1. Any person or corporation desiring to construct, maintain, conduct or operate a livery-stable, within the corporate limits of the city of Billings, on any block where the majority of the buildings situate thereon are residences, must first obtain a permit from the city council as hereinafter provided.

" 'Sec. 2. Any person or corporation desiring to so construct, maintain, conduct, or operate a livery-stable as aforesaid, must file with the city council a written application in which must be stated the number of lots and block upon which he desires to construct, maintain, conduct or operate a livery-stable, the nature of the structure, the manner in which said livery-stable is to be conducted or operated and a description of all buildings situate on said block and the purpose for which each is used. At the time of filing said application such person or corporation shall also file with the city council the written consent to the granting of such application of a majority of the lot owners of the block on which he desires to construct, maintain, conduct, or operate said livery-stable.    *    *    *

" 'Sec. 5. The provisions of this ordinance shall not apply to any livery-stable now being maintained, conducted or operated.

" 'Sec. 6. Any person or corporation who shall construct, maintain, conduct, or operate any livery-stable within the corporate limits of the city of Billings in violation of the provisions of this ordinance, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not less than $10.00 nor more than $300.00, and each day such livery-stable

is so maintained, conducted, or operated shall be deemed a separate and distinct offense.  *  *  *'

*    *    *    *    *    *    *    *    *    *

"(14) That said defendants began to conduct, operate, and maintain their livery-stable business in said livery-stable after the passage, approval, and publication of said ordinance and prior to the 12th day of April, 1906.

"(15) In addition to the livery-stable operated and maintained by said defendants there are three other livery-stables in said city, two of which are in residence districts of said city, but which were in operation long before the passage of said ordinance.

"(16) That said livery-stable of defendants on said lots has always been, since its construction, kept in good, orderly, and clean condition, at least equal to any other livery-stable in said city and far superior to some.  *  *  *"

As the ultimate question to be decided here is whether the conviction of the defendants shall be affirmed or set aside, we only deem it necessary to pass upon the one point which seems to us particularly decisive of that question. That point is squarely presented by the appellants in their brief, as follows: "The ordinance in question is an unlawful discrimination between appellants and other proprietors of livery-stables in the city of Billings."

It will be observed that the defendants were not prosecuted for "constructing" a livery-stable, but for maintaining, conducting and operating one. Let us, then, for the purpose of analyzing the question, eliminate the word "construct" from sections 1, 2, and 6 of the ordinance. Section 1 would then require any person desiring to maintain, conduct, or operate a livery-stable within certain residence portions of the city of Billings, to first obtain a permit from the city council, and section 2 would provide that any person desiring to maintain, conduct, and operate a livery-stable, as aforesaid, must first file his written application therefor and the consent in writing of a majority of the

lot owners of the block in which he desires to maintain, conduct, and operate said stable. Section 6 would read: "Any person  *  *  *  who shall  *  *  *  maintain, conduct or operate any livery-stable  *  *  *  in violation of the provisions of this ordinance shall be deemed guilty of a misdemeanor  *  *  *." Section 5 provides that the provisions of the ordinance shall not apply to any livery-stable that was being maintained, conducted, or operated at the time of the passage of the ordinance, and the record discloses the fact that there were three livery-stables to which the exception would apply.

It seems that defendants were allowed to practically complete their stable, and were then prosecuted for operating it. The effect of the ordinance is that the first three stables, two of which were in the residence district, could continue to operate, but the defendants could not operate at all. The legislature, by paragraph 42 of section 4800 of the Political Code, as amended by an Act of the Fifth Legislative Assembly, approved March 8, 1897 (Laws, 1897, p. 203), gave to city councils the express authority to regulate the location of livery-stables.

In the case of *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 82 Pac. 833, this court reviewed the decisions of the supreme court of the United States construing that portion of the fourteenth amendment to the Constitution of the United States, which declares that "no state shall  *  *  *  deny to any person within its jurisdiction the equal protection of the laws." The opinion of Mr. Justice Field in *Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, is there quoted, in which he says: "Equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights;  *  *  *  all persons should be equally entitled  *  *  *  to enjoy property;  *  *  *  no impediment should be interposed to the pursuits of anyone, except as applied to the same pursuits by others under like circumstances;  *  *  *  no greater burdens should be laid upon one than are laid upon others in the same calling and condition."

In the case of *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, also there cited by this court, it was said that "the equal protection of the laws is a pledge of the protection of equal laws."

"Not only must the law as enacted furnish equal protection to all, but also, the legislature, in enacting any law, must so adjust its provisions that it will operate equally upon the individuals constituting the class of citizens whose conduct it is intended to control." (*State* v. *Cudahy Packing Co., supra.*)

The case of *Mayor etc. of Hudson* v. *Thorne,* 7 Paige (N. Y.), 261, was an action in equity to restrain the erection of a hay press building on a certain city lot. The city council had passed an ordinance by which, among other things, it was ordered that no person should erect or construct, or cause to be erected or constructed, any wooden or frame barn, stable, or hay press, within certain specified limits of the city of Hudson, of more than thirty feet in width and thirty feet in depth, without the permission of the common council. The chancellor said : "It appears there were such buildings already in existence, not only within other compact parts of the city, but also within the prohibited limits, the occupation of which, for storing and pressing hay, the common council did not intend to restrain. * * * If the manufacture of pressed hay within the compact parts of the city is dangerous in causing or promoting fires, the common council have the power * * * to prevent the carrying on of such manufacture, but, as all by-laws must be reasonable, the common council cannot make a by-law which shall permit one person to carry on the dangerous business, and prohibit another, who has an equal right, from pursuing the same business. Neither have they the right to permit the dangerous manufacture to be carried on in buildings already erected, and to prohibit these defendants, whose building was destroyed by an incendiary, from rebuilding the same for the purpose of carrying on a manufacture which is permitted to others." (See, also, Cooley's Constitutional Limitations, p. 282.)

"As it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not so, ordinances *which have this effect* cannot be sustained. Special and unwarranted discrimination, or unjust or oppressive interference in particular cases, is not to be allowed. The powers vested in municipal corporations should, as far as practicable, be exercised by ordinances general in their nature and impartial in their operation." (1 Dillon on Municipal Corporations, 4th ed., sec. 322.)

In the case of *Tugman* v. *City of Chicago,* 78 Ill. 405, the court said: "It will be observed that the regulation, to enforce which this suit was instituted, prohibits the use and operating of slaughter-houses which should be erected after the first day of January, 1872, while those that were erected prior to that time are left perfectly free to be operated as the owners thereof may desire. If the health or comfort of the city required the prohibition of new slaughter-houses within a designated part of the city, the same reason would surely demand that old ones should be discontinued. If one of the citizens of Chicago is permitted to engage in the business of slaughtering animals in a certain locality, an ordinance which would prevent, under a penalty, another from engaging in the same business, would not only be unreasonable, and, for that reason, void, but its direct tendency would be to create a monopoly, which the law will not permit. The fact that certain persons were engaged in the business within the district designated in the ordinance at the time of its adoption, gave them no right to monopolize the business, nor would such fact authorize the board of health to provide that such persons might continue the avocation, while others should be deprived of a like privilege who should engage in the business at a later period. If the board of health had any power to adopt an ordinance on the subject, the ordinance, to be valid, should not discriminate in favor of any citizen. If it prohibited one from carrying on the business, that prohibition should extend to all, regardless of the time the business may have been

commenced.  A regulation of this character, to be binding upon the citizen, must not only be general, but it should be uniform in its operation.''  (See, also, *City of Chicago* v. *Rumpff*, 45 Ill. 90, 92 Am. Dec. 196.)

The case of *Town of Crowley* v. *West,* 52 La. Ann. 526, 78 Am. St. Rep. 355, 27 South. 53, 47 L. R. A. 652, was a case very similar to this one.  The defendant was fined for violating an ordinance of the town of Crowley which prohibited the establishment of livery-stables, except within certain limits.  The ordinance was as follows: ''Section 1: That hereafter it shall be unlawful to establish, maintain, locate or operate a livery, feed, sale, and boarding-stable within any portion of the corporate limits of the town of Crowley, except as hereinafter provided.'' ''Section 3: That the provisions of this ordinance shall not be applied to livery, sale, boarding, and feed stables, already in existence and under operation.''  The court said: ''We have, then, a case in which it appears that a person, engaged in a business which is conceded to be lawful, in which four other persons, or firms, are engaged, in the same town, which, so far as the record discloses, is conducted properly and inoffensively, is nevertheless, by the operation of a municipal ordinance, arrested and fined, because he has failed to establish his said business in a part of the town remote from the business center, rather than at the place which he considers most advantageous, and it further appears that the other four persons or firms engaged in the same business are not to be affected by the ordinance, but are to be permitted to conduct their business where they please, and that it naturally pleases them to remain in the central part of the town, from which the defendant is to be permanently excluded.  The proposition that the defendant can be thus discriminated against, and that his four competitors in business can be thus secured the monopoly, in perpetuity, of the livery-stable business in Crowley, cannot be seriously entertained.''

We conclude, therefore, that, both upon reason and the decided cases, the ordinance we have had under consideration was

inoperative and void as to these defendants. It is therefore ordered that the judgment of the district court be reversed, and the cause is remanded, with directions to that court to dismiss the action and enter judgment for the defendants in accordance with the stipulation in the agreed statement of facts.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY, concur.

Rehearing denied February 26, 1907.