STATE EX REL. SCHNEIDER, RELATOR, v. CUNNINGHAM,
STATE AUDITOR, RESPONDENT.

(No. 2,713.)

(Submitted May 10, 1909.   Decided May 25, 1909.)

[101 Pac. 962.]

*Supreme Court—Power to Appoint Assistants—Stenographer—
State Board of Examiners—Powers—Constitution—Statutes
—Appropriations—Mandamus.*

Supreme Court—Assistants—Power to Appoint—Compensation—Liquidated
Claim.
  1.  Where the state has failed to make provision for necessary as-
  sistants to the supreme court, the court may, both under its inherent
  power and under the authority conferred by section 6248, Revised Codes,
  select and appoint them, and make the compensation due them for their
  services a charge against the state as a liquidated claim.
Same—State Board of Examiners—Powers.
  2.  Section 262, Revised Codes, authorizing the board of examiners to
  employ clerical help for any state officer or board, and prohibiting
  such officers or boards from employing clerks without the authority
  of the board of examiners, does not apply to the employees of the
  supreme court; it, viewed as a department of the state government,
  not being an officer or board within the terms of the provision.
Same—State Board of Examiners—Powers—Constitution—Statutes.
  3.  Section 20, Article VII, of the Constitution, and section 226, Re-
  vised Codes, empowering the state board of examiners to examine all
  claims against the state, except salaries of officers fixed by law, apply
  to unliquidated claims, and not to those the amounts of which have been
  fixed specifically by contract or by any department of the state govern-
  ment having authority to fix them.
Same—Stenographer—Compensation—Liquidated Claim.
  4.  *Held,* on *mandamus* to the state auditor, that, under the rule de-
  clared in paragraph 3 above, where by general appropriation bill pro-
  vision for the compensation of the stenographer of the supreme court
  had been made, his claim for salary earned was not an unliquidated
  claim which required approval of the board of examiners before issu-
  ance of warrant.
Same—Stenographer—Compensation—General Appropriation Bill.
  5.  The declaration in a general appropriation that the sums named
  therein, "or so much thereof as may be necessary," are appropriated
  for the purposes named, has no reference to the salary of the sten-
  ographer of the supreme court as fixed therein, so as to empower the
  state board of examiners to fix a smaller amount.  Any discretion in
  this regard is addressed to the supreme court, vested with the power
  to appoint such officer and control the disbursement of the sum thus
  appropriated.

ORIGINAL application by A. C. Schneider for writ of *mandamus* to H. R. Cunningham, State Auditor. Writ granted.

*Mr. C. A. Spaulding,* for Relator.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for *mandamus.* The legislature has never passed an Act formally creating the office of stenographer of this court, but from session to session has made appropriations in the general appropriation bill for the executive and judicial departments of the government of specific sums to be used for the employment of a competent person to perform the services necessary in this behalf. This amount has been increased from time to time as the changing circumstances seemed to require. The relator has served the court at its pleasure by appointment since February 10, 1896. At that time the provision for his compensation was $125 per month. At the session of the legislature of 1901 the appropriation made was $150 per month, and at the last session the appropriation was increased to $200 per month. Payment of these sums has heretofore been made from month to month without question, the state board of examiners assuming that the appropriation thus made fixed the amounts to which the person performing the services has been entitled, and that the claims therefor were not claims against the state in the ordinary sense of that term. On March 24, 1909, the board assumed to authorize this court to employ a stenographer, and fixed the compensation to be paid him at $150 per month. The general appropriation bill having been approved on March 11, 1909, the relator on April 8 made demand upon the auditor that he issue his warrant upon the treasurer for the full amount of $200 as compensation for services performed during the month of March. This demand was refused because of the action of the

board of examiners above referred to.    Thereupon this proceeding was instituted to compel the auditor to issue the warrant as demanded.

There is no controversy as to the facts.    The question at issue is whether, after the legislature has made what may, for present purposes, be deemed sufficient provision for proper and necessary aid to the court, the board of examiners has the authority to say that the relator, the appointee of the court, is not entitled to the compensation thus provided.    It has assumed to act under section 20, Article VII, of the Constitution, and section 262, Revised Codes.    These provisions are as follows: "Sec. 20.    The Governor, Secretary of State and Attorney General shall constitute a board of state prison commissioners, which board shall have such supervision of all matters connected with the state prisons as may be prescribed by law.    They shall constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claims against the state except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board.    The legislative assembly may provide for the temporary suspension of the State Treasurer by the Governor, when the board of examiners deem such action necessary for the protection of the moneys of the state."    (Constitution, Art. VII.)    "Sec. 262 [Revised Codes].    The board of examiners may at any time when necessary, employ clerical help for any state officer or board, and no clerks must be employed by such officers or board without the authority of the board of examiners, and no such clerks must be employed by the board of examiners except when all the duties of the office cannot be performed by the officer himself."    The result of this action, if it be held to be of binding force, is that this court in some of its important functions is subject to the control of the state board of examiners; for to say that it may grant the court permission to employ a stenographer is to say that in its discretion

it may withhold permission.   This means no more nor less than that, though the services of a stenographer are absolutely necessary to the proper accomplishment of the work of the court— a fact about which there can be no dispute—the board may in its discretion cut off all such services, and thus virtually disable the court, or at least seriously impede and hamper it, in the discharge of its duties.   To say that it may fix the compensation to be paid for such services is also an assertion of the same power; for, if through mistake or lack of knowledge, or from any other cause, if any such exist, the board should fix the compensation at such a figure as to render it impossible to secure suitable service, this would be attended by the same consequences as if no compensation were allowed.

The Constitution of this state divides the powers of government into three distinct departments—the legislative, executive and judicial.   (Article IV, section 1.)  It then provides that "no person or collection of persons charged with the exercise of powers belonging to one of these departments shall exercise any powers properly belonging to either of the others"; the only exception being where some provision is found in the Constitution expressly providing otherwise.   It is not our purpose to discuss this provision, nor to attempt to define with exactness the limitations imposed by it.   It is within the knowledge of every intelligent man that its purpose is to constitute each department an exclusive trustee of the power vested in it, accountable to the people alone for its faithful exercise, so that each may act as a check upon the other, and thus may be prevented the tyranny and oppression which would be the inevitable result of a lodgment of all power in the hands of one body. It is incumbent upon each department to assert and exercise all its power whenever public necessity requires it to do so; otherwise, it is recreant to the trust reposed in it by the people. It is equally incumbent upon it to refrain from asserting a power that does not belong to it, for this is equally a violation of the people's confidence.   Indeed, the distinction goes so far as to require each department to refrain from in any way impeding

the exercise of the proper functions belonging to either of the other departments.  This statement applies with special force to the judicial department, since it is the body upon which is cast the duty of deciding finally in particular cases whether there has been excess on the part of the executive or legislative departments calling for restraint or defect requiring compulsory action in order to supply it.  Hence it has consistently recognized the fact that the powers of the legislature are, within the limitations of the Constitution, plenary, by recognizing and enforcing its enactments in all cases, except when refusal has been clearly necessary, and there is no reasonable doubt but that the body has infringed some provision of the state or federal Constitution. (*State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635; *State ex rel. Anaconda C. Min. Co.* v. *Clancy,* 30 Mont. 529, 77 Pac. 312; *State ex rel. B. & M. Min. Co.* v. *District Court,* 30 Mont. 193, 76 Pac. 10; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 82 Pac. 833; *Jordan* v. *Andrus,* 26 Mont. 37, 91 Am. St. Rep. 396, 66 Pac. 502.)  It has also uniformly refused to attempt to control the action of the executive officers, either of the state or of any municipality, except to coerce them into activity when there has been shortcoming, or to restrain action where there has been excess.  (*State ex rel. Woody* v. *Rotwitt,* 18 Mont. 502, 46 Pac. 370; *State ex rel. State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449; *State ex rel. Gilchrist* v. *Weston,* 27 Mont. 185, 70 Pac. 519, 1134; *State ex rel. Haire* v. *Rice,* 33 Mont. 365, 83 Pac. 874.) It will be observed upon a casual examination of the foregoing cases that whenever the particular executive duty required the exercise of political or administrative discretion, this court has deemed itself without power to interfere, and that, too, without regard to the question whether the discretion was wisely exercised or not.

In many respects the duties of the stenographer employed by this court are peculiar, and cannot be performed by one who does not possess special qualifications.  In the first place, he must possess the requisite mechanical skill, not only to take

stenographic notes during the preparation of written opinions by the different members of the court, but after they have been prepared, he must reduce them to suitable form in type to become a part of the permanent records of the court. In doing this it is often the case, because of his fitness and knowledge, that he must verify citations by inserting the proper page, title and volume. It is also often the case that he must take stenographic notes of oral testimony of witnesses upon hearings had in this court. He must be, then, not only a skillful mechanic, but an intelligent helper. During the progress of his work he occupies toward the members of the court not only close personal relations, but enjoys, in connection with his work, their utmost confidence, because of necessity he must know beforehand the result in every decision often many days or weeks before it is made public. It is therefore within his power, either from corrupt motives or by inadvertence or lack of discretion, to betray this confidence, and thus become the source of great public disorder and mischief. This intimate relation cannot be avoided. Hence the particular person who is the depositary of the court's confidence must not only be honest and trustworthy, but also careful, industrious and discreet. His personal habits, associates and mode of life must also be taken into account; for, though one may be ever so skillful and honest, daily contact with him might be objectionable, because his standard in these respects might be too low. The people are entitled to the best service the court can afford, not only in the work done by its members individually and collectively, but also by the employees under its control. They are entitled to have its business conducted with dispatch; hence attentive and effective industry in its employees is indispensable. For the accomplishment of this end the court is entirely and solely responsible, and, if there be shortcoming or failure, either in the intellectual or mechanical quality of its work, it alone is to blame.

In view of these considerations, it is manifest that the power to select the proper employees could not with propriety, be vested elsewhere than in the court itself; and it is equally mani-

fest that the power to say whether it may or may not be necessary to have assistance, and what the qualifications of the assistants shall be, may not be vested elsewhere.  If the power of appointment exists at all, it is a necessary power of the court, and, since the qualifications of the individual desired is determined in a measure by the amount of compensation paid for his services, the power to fix the compensation is also a necessary power.  In short, the court has the inherent power to select and appoint its own necessary assistants and make the compensation due for their services a charge against the state as a liquidated claim.  Any other conclusion would be to put the court in the attitude of a petitioner to the board of examiners from time to time, and thus reduce it from its position as a co-ordinate branch of the government to the level of the ordinary citizen who deserves or claims payment for services rendered.  But, fortunately, we are not compelled to resort to the assertion of our inherent power.  The legislature, recognizing the fact that the court has the power by which it may supply its own necessities, enacted section 6248 of the Revised Codes.  It provides: " * * * If proper rooms in which to hold the court, and for the accommodation of the officers thereof, are not provided by the state, together with attendants; furniture, fuel, lights and stationery, suitable and sufficient for the transaction of business, the court, or any two justices thereof, may direct the clerk of the supreme court to provide such rooms, attendants, furniture, lights, fuel and stationery; and the expenses thereof, certified by any two justices to be correct, must be paid out of the state treasury, out of any funds in the state treasury not otherwise appropriated."  In case no provision had been made for a stenographer, there would have been furnished by this section a mode by which one could have been secured, as well as the power to fix and order his compensation paid.  This provision indicates recognition on the part of the legislature of the necessity that this court should be free from any control in the selection of its assistants in case it should itself have failed to make suitable provision for them.  Can it properly be said that,

since it has made provision, the situation is different? Whatever application section 262, *supra,* may have to the help employed in the executive department, it cannot have, and was not intended to have, any application to the necessary employees attached to this court. This court, viewed as a department of the state government, is neither an, officer nor a board, and therefore does not fall within the terms of this provision. It may well be said that in enacting it the legislature, prompted by motives of economy, deemed it wise to lodge in the board of examiners the discretionary power to determine when an officer of the executive department needs clerical assistance, as well as the amount that shall be expended for it, thus leaving it to the board to say whether any part of an amount appropriated in that behalf shall or shall not be expended. This may not in any way encroach upon the powers of the officers of that department, for the board belongs to that department. But the legislature could with no more propriety lodge in that department the power to appoint the employees of this court than it could empower this court to appoint the employees of the various executive officers.

The provision of the Constitution, *supra,* cited as a justification of the action of the board, has no application to a claim such as the one here involved. Nor has section 226, Revised Codes, which declares, in the form of a statute, the prohibition embodied in the Constitution. Both apply to unliquidated claims, and not to those the amounts of which have been fixed specifically by contract or by any department of the government having authority to fix them. In this case relator's claim was fixed by the legislature by appropriation of the amount named in the general appropriation bill. The relator was retained in his position because of this fact. His claim is therefore not an unliquidated claim within the class which must be approved by the board of examiners. The relator is *pro hac vice* during his employment an officer of the court, and as such his compensation has been fixed by law—not, indeed, in the sense that there is a particular statute declaring in terms what his

compensation shall be, but by virtue of his continued employment under appointment by this court.    He is therefore entitled to the amount so fixed.

Nor is it to the point that the general appropriation bill declares that the sums named therein, or "so much thereof as may be necessary," are appropriated for the purposes named.    The expression "so much thereof as may be necessary" is not appropriate to any sum mentioned, if such sum has been fixed by law, but, if the expression is addressed to any department of the government, it must be held to be addressed to that department which has the disbursement of the particular sum; so that, so far as it must control the disbursement of the sum appropriated for the employment of a stenographer by this court, the expression is addressed to this court.    For illustration: At its last session the legislature, among others, made an appropriation of $10,000, or so much thereof as might be necessary, to pay the incidental expenses of the session.    The various claims provided for were properly not regarded by the board of examiners as claims against the state, which it should audit and allow; nor did the auditor hesitate to draw his warrant upon the certificate of the proper disbursing officers of the legislature.    These views are so clearly just that it would seem unnecessary to cite any authority in support of them.    They have been expressed by the courts generally whenever the same or similar questions have arisen.    (*White* v. *Hughes County,* 9 S. D. 12, 67 N. W. 855; *In re Appointment etc.,* 35 Wis. 410; *In re Day,* 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519; *Rogers* v. *Brown et al.* (D. C.), 136 Fed. 813.)

Let the writ issue as prayed for.

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.