No. 13,149.

CITY AND COUNTY OF DENVER ET AL. *v.* LYNCH ET AL.

(18 P. [2d] 907)

Decided December 29, 1932.

Mr. JAMES D. PARRIOTT, Mr. FREDERICK P. CRANSTON, for plaintiffs in error.

Messrs. QUIAT & CUMMINGS, Mr. GEORGE H. BLICKHAHN, for defendants in error.

Mr. THOMAS A. NIXON, Mr. RAYMOND L. SAUTER, amici curiae.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as the city, defendant in error Lynch as plaintiff, and defendant in error Luxford as the county judge.

This suit is prosecuted under our Declaratory Judgments Act and its purpose is to secure a judicial determination of the constitutionality of Colorado's "Old Age Pension" law and an interpretation thereof. It was brought by plaintiff against all the plaintiffs in error and the county judge. The latter, by his answer, took substantially the same position as plaintiff, admitted the constitutionality of the statute and alleged that he had discharged, and stood ready to discharge, all his duties thereunder. The district court held one clause of the act unconstitutional but sustained the remainder and entered judgment accordingly. To review that judgment the city prosecutes this writ, and because of the position taken by the county judge he is made a defendant here.

In 1927, the General Assembly passed "An Act Relating to Old Age Pensions," etc. S. L. 1927, p. 542, c. 143.

Section 1 thereof authorized, but left it optional with, the county commissioners of each county to establish the system provided by, and to operate under, the terms of the act. Section 2 extended its provisions to any person qualified thereunder "while residing in a county or city and county in this state which maintains a system of old

age pensions." Subdivision A of section 3 fixed the requisite age at 70 years, while section 18 provided that the commissioners of each county "which establishes an old age pension system pursuant to the provisions of this Act" should make the appropriations necessary to effectuate it. Benefits under the act were, by its terms, limited to persons whose incomes were less than $1 per day, who had been citizens of the United States and residents of the state for fifteen years, who were not inmates of certain specified institutions, who had not, during the past ten years been imprisoned for felony, who had not deserted or failed to support a family, who had not, during the past year been vagrants, who had no relative able and legally liable to support them, who were not supported by charitable institutions, whose property did not exceed $3,000 in value, and who had not disposed of their property for the purpose of bringing themselves under the terms of the act. It authorized the county judge to order, as a condition precedent to the granting of relief, the transfer of applicant's property to the county commissioners as trustees. It made the county attorney the legal representative of the commissioners for the purposes of the act. Section 9 provided for a sworn application to the county judge, on forms to be furnished by the county commissioners, an investigation of merits by the judge and a decision thereon. It provided that said judge should "fix the amount of the pension *with the approval of the board of county commissioners*" and that "the decision of *such court and board* shall be final." The act further provided for the issuance of a certificate to the applicant, reports by him to the judge, modifications under changed circumstances, cancellation of certificates improperly obtained or whose holders had been convicted of certain offenses, reports by the commissioners to the secretary of state, and finally for the punishment of offenses committed in relation to the statute.

In 1931, the General Assembly passed "An Act Relating to Old Age Pensions," etc., S. L. 1931, p. 678, c. 131,

whose title varies in certain particulars from that of the Act of 1927. The later title makes no reference to "amendment" but this act is in fact, and expressly in its body, an amendment of the former. It amends section 1 by making the system compulsory. It amends subdivision A of section 3 by reducing the age limit from 70 to 65 years, and it deletes from said sections 2 and 18 the quoted phrases relating to the optional character thereof.

Since no question is here raised concerning the validity or applicability of the Declaratory Judgments Act we assume these without deciding them. It is admitted that if the Old Age Pension Act, as so amended, is valid, plaintiff is within its terms. The clause thereof held unconstitutional by the trial court, and admitted here by counsel for plaintiff to be so, is said provision of section 9 that the judge shall fix the amount of the pension "with the approval of the board of county commissioners"; which necessarily carries with it the words "and board" in the following provision of the same section, i. e., that "the decision of such court *and board* shall be final."

■ All these parties, save the county judge, join in propounding to the court some thirteen interrogatories, many of them abstract and but remotely related to the litigation. For instance, "Has the legislature the right to impose upon the person who happens to be county judge additional duties which may or may not be judicial?" In declining to answer such questions we say again: "This Act [Declaratory Judgments Act] was not intended to repeal the statute prohibiting judges from giving legal advice, nor to impose the duties of the profession upon the courts, * * * nor to settle mere academical questions." *Gabriel v. Board of Regents,* 83 Colo. 582, 586, 267 Pac. 407.

We find it unnecessary and inadvisable here to go further than is requisite to dispose of the question of the constitutionality of the legislation, especially in view of the fact that we have been forced to the conclusion that

106

it is, beyond doubt, unconstitutional. Although not bound by counsel's admission that, as written, it is so, we yet commend the judgment which reached that conclusion and the frankness which prompted its statement.

■ "The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person, or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution *expressly* directed or permitted." Art. III Colo. Const., p. 37, C. L. 1921.

"The departments are distinct from each other, and, so far as any direct control or interference is concerned, are independent of each other. More, they are superior in their respective spheres." *Greenwood C. L. Co. v. Routt*, 17 Colo. 156, 162, 28 Pac. 1125.

Generally speaking "It is incumbent upon each department to assert and exercise all its powers whenever public necessity requires it to do so; otherwise, it is recreant to the trust reposed in it by the people. It is equally incumbent upon it to refrain from asserting a power that does not belong to it, for this is equally a violation of the people's confidence. Indeed, the distinction goes so far as to require each department to refrain from in any way impeding the exercise of the proper functions belonging to either of the other departments." *State v. Cunningham*, 39 Mont. 165, 168, 101 Pac. 962.

■ The practical application of this rule is sometimes difficult and the line of demarcation between the departments often indefinite. But, as will be later observed, we are not here embarrassed by fine distinctions. It is universally held that the legislative department is powerless to confer judicial duties upon the officials of other departments. *Sing Tuck v. U. S.*, 128 Fed. 592, 63 C.C.A. 199; *Corbett v. Widber*, 123 Cal. 154, 55 Pac. 764. Additional authorities are unnecessary though they might be multiplied indefinitely.

The purposes of the act before us are: 1. To determine what persons are entitled to the allowances therein provided for. That duty is devolved upon the county judge. 2. To ascertain the amount to be paid in individual cases. That amount is determined by the county judge "with the approval of the county commissioners." 3. To secure the payments of the sums so adjudicated. These payments are obtained from the county treasurer on the authority of the certificates issued by the county judge "with the approval of the county commissioners."

We think it requires no argument to demonstrate that the jurisdiction by this act vested in the county court, or conferred upon the county judge (and for the purposes of our investigation it is immaterial which) is judicial. It is equally apparent that in fixing the amount to be paid, either the commissioners participate with the judge in the discharge of a judicial duty, or the county judge is prohibited from discharging such duty save by consent of the commissioners, or an appeal from the decision of the county judge lies to the commissioners. In either event no legislation ever presented a clearer case of the conferring of judicial duties on nonjudicial officers. All this is emphasized and aggravated by the following provision that "the decision of such *court and board* shall be final." So far as the determination of the allowance is concerned, this section need not have mentioned the county judge at all since it completely paralyzes his judicial power and makes of the commissioners a court of first and final jurisdiction. The only essential problem remaining for solution is, May the body of the act be upheld after these clearly void provisions are stricken?

█ An act or a statute may be constitutional in one part and unconstitutional in another, and, if severable, the invalid may be stricken and the valid left stand. 6 R. C. L., p. 121, §121. The power of the court to make such a decision rests primarily upon legislative intent. If we may reasonably presume that the General Assembly would have passed this act with the commissioners elim-

inated and the sole power to fix the amount of the allowance vested in the county judge, we may thus emasculate, and thus sustain it. Id. p. 123, §122. If the invalid portion of an act was apparently an inducement to the passage of the valid, the statute is not severable. Id. p. 125, §123. Nor can an essential part of an act, which colors the whole, be stricken as invalid and the remainder sustained. Id. p. 127, §125.

Applying these rules to the question before us we find this situation. The county commissioners are constituted by law the general managers of the business of the county, the custodians of its property and disbursers of its revenue. Prior to the passage of this act they were vested with the sole care of dependents and charged with the sole duty of determining what persons were indigent and fixing the amount of essential relief. C. L. 1921, §§8907, 8908, 8915, 8921, 8937. In so far as those persons included in the act are concerned, the statute, as written, left the control of the purse strings in the hands of the commissioners and to that extent did not amend existing laws. With the unconstitutional portions stricken that control passes from the commissioners to the county judge and in that respect the act materially amends the existing law. Since it thus appears that, in all probability, the invalid portion of the act was an inducement to the passage of the valid, since we cannot say that it was the intent of the General Assembly to establish this old age pension system and force it upon the counties with their commissioners deprived of all control over its administration, and since we cannot say that the resulting finality of the decision of the county judge would be as potent an argument with the lawmakers for the passage of the act as the finality of the joint decision of the county judge and the holders of the county purse strings, we must conclude that the unconstitutional portion of this act carries the whole down with it. To hold otherwise we must, by construction, take the purse strings from the commissioners, to whom the legislature

has expressly committed them, and hand them to the county judge from whom the legislature has expressly withheld them. This is judicial legislation and beyond our power.

Regrettable as the result of our conclusion may be, it is unavoidable, and its effect is greatly minimized by the fact that a regular session of the General Assembly will convene a few days hence, and such remedy may then be provided as in the wisdom of the lawmakers seems advisable.

Other grave constitutional questions are argued which we consider it neither necessary nor advisable now to determine. Such action on our part could serve only as a possible guide to the General Assembly in framing legislation in lieu of this, should it desire to do so. But the briefs herein are accessible to that body and the presumption is, that so far as the present act contains other objectionable features, if upon careful consideration any such be found, they will be eliminated by the lawmakers themselves.

The judgment is reversed.

MR. JUSTICE HILLIARD dissents. MR. JUSTICE ALTER. not participating.

MR. JUSTICE HILLIARD, dissenting.

I am not in accord with the court's negation of the old age pension act. First, I do not think the constitutionality of the law is challenged by a party qualified to raise the question. See *Braxton County Court v. State of West Virginia, ex rel.*, 208 U. S. 192, 52 L. Ed. 450, 28 S. Ct. 275. Administrative officials, as I conceive, would do well always to proceed as directed by legislation, and leave to those upon whom the burden of the law would fall, taxpayers here, to determine their course. It might well be that none would offer challenge. Hon. George A. Luxford, county judge of the City and County of Denver, proceeded as the legislature commanded, and the county

110

commissioners of the same county, plaintiffs in error, could well have emulated him. Second, while there is not time, nor would it be profitable, to elaborate my views, my conviction is that what was attempted by the legislature in the premises, in general and detail, is well within the constitutional power of the law making body. Administrative difficulties, even if real, and I regard those urged as fanciful, could be the subject of further legislation. I respectfully dissent from the judgment of the court.