No. 20,531.

CHARLES L. SMITH, ET AL., AS BOARD OF COUNTY
COMMISSIONERS OF EL PASO COUNTY, ET AL., *v.*
G. RUSSELL MILLER, ET AL., AS DISTRICT JUDGES IN AND
FOR THE FOURTH JUDICIAL DISTRICT OF COLORADO, ET AL.
(384 P. [2d] 738)

Decided August 19, 1963.

Messrs. TARTER and TARTER, Messrs. STRAND and GEDDES, for plaintiffs in error Charles L. Smith, et al.

Mr. J. F. SCHNEIDER, for plaintiff in error Colorado State Association of County Commissioners.

Mr. JIM R. CARRIGAN, Mr. W. H. ERICKSON, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFFS in error Smith, Monk, and Ross are county commissioners of El Paso County. The Colorado State Association of County Commissioners was granted leave to appear as an intervenor. The interests of the commissioners and the intervenor are the same, and plaintiffs in error accordingly will be referred to as the Board. Defendants in error were plaintiffs in the trial court. The three parties first named in the above caption are judges of the district court of the Fourth Judicial District which includes the county of El Paso. The other defendants in error are employees of the district court of El Paso county. They will be referred to collectively as plaintiffs. The amount of salary which they are entitled to receive is the subject matter of this controversy.

The amended complaint of plaintiffs contained two claims for relief which, as stated in the prayer of each claim, were as follows:

(1) "Plaintiffs pray that this Honorable Court issue a

Writ of Mandamus commanding the Board of County Commissioners of El Paso County to approve the salaries listed in Exhibit 'A' and set by the Judges of the District Court of the Fourth Judicial District or show cause why said salaries should not be approved, * * * "

(2) "Plaintiffs pray that this Honorable Court, * * * by declaratory judgment construe and interpret each of said statutes, determine their validity, declare the relative rights, powers, duties, and liabilities of these parties under them, * * * and further that the Court order the Defendants in their capacities as County Commissioners to pay the Plaintiffs' reasonable expenses of litigation, attorneys' fees, and court costs from funds of El Paso County, Colorado."

The Honorable John N. Mabry, judge of the district court for the Third Judicial District, was assigned by this court to hear the case. No evidence was submitted upon the trial since all pertinent facts were presented by written stipulation entered into by the respective parties.

The facts are as follows: In 1961 the four judges of the district court made a survey of salary scales in other district courts in Colorado counties having comparable county population, number of employees, court case loads, and other factors peculiar to such court's personnel and their duties. They also made extensive investigation of the wage scale of office employees in governmental agencies, business, and industry in and near El Paso county. From this information so received, and considering the ability, proficiency, responsibility of the positions, and competency of the employees of the district court of El Paso county, the plaintiff judges and decedent Judge Schaper in October 1961 agreed upon, determined, and fixed certain 1962 salaries to be paid to said employees, listed in writing the names and enumerated the salaries so fixed, and delivered the list to the defendant county commissioners, and asked that the salaries be approved and payment made accordingly

for the year 1962. A substantial number of such salaries were approved by the commissioners, but the salaries of plaintiff employees were disapproved, and the commissioners thereupon set a different salary scale for plaintiff employees under a formula the commission had adopted for all "county employees," based largely on seniority of service and on the report of a survey made by an agency engaged by the commission for such purpose. The judges and commissioners conferred on two or three occasions in efforts to resolve their differences, but to no avail. During the pendency of the action counsel stipulated in open court that the plaintiff employees should be paid monthly salaries at the 1961 rate, without prejudice to their claims herein.

The judges maintain that under C.R.S. '53, 39-16-1 and 56-3-8 (as amended), they have the inherent and statutory power to fix the salaries of their court employees as long as the judges do not act unreasonably, arbitrarily, or capriciously in fixing such salaries and the salaries so fixed are reasonable in amounts; that the commissioners have a ministerial and not a discretionary duty to approve the salaries under such circumstances, and the burden is on the commissioners to show unreasonable, arbitrary or capricious acts by the plaintiff judges, and that the salaries so set were unreasonable; that the commissioners have acted unreasonably, arbitrarily and capriciously in refusing to approve the salaries so fixed by the judges.

The commissioners urge that under the same statutes referred to above, they have the discretion to disapprove the salaries here considered; that there was sufficient evidence before the commissioners to sustain their actions, and that the evidence further shows that the commissioners acted reasonably and were not arbitrary or capricious and did not exceed their authority in disapproving such salaries and in setting the salaries of the district court employees in amounts different than the judges had determined and fixed. The trial court upheld

the above stated position of plaintiffs and entered judgment as prayed in the complaint.

Pertinent portions of the statutes which are here subject to interpretation are as follows:

"39-16-1. The judge or judges of the district court of each judicial district shall appoint one or more probation officers who shall not be dismissed without good cause shown. The judge or judges shall fix the salary of such officers commensurate with the time required to discharge the duties hereunder, subject to the approval of the county commissioners of the counties of such judicial district. * * * "

"56-3-8. * * * Such clerk shall receive such compensation as shall be fixed by the judge or judges * * * as shall be approved by the board of county commissioners. * * * "

█ Interpretation of the foregoing involves the application of certain well established rules of construction, among which we mention the following: (1) It is the legislative intention, as expressed in the statute, which the court must ascertain and declare; and (2) it must be assumed that the legislature acted with full knowledge of relevant constitutional provisions, inherent judicial powers existing, and of previous legislation and decisional law on the subject; that it did not intend to create a situation amounting to a departure from the general concept of democratic government; and that it sought to recognize and confirm inherent powers rather than to destroy them.

Article III of the Colorado Constitution divides the powers of government into three departments and directs that, " * * * no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, * * * ." In *City and County of Denver, et al., v. Lynch, et al.,* 92 Colo. 102, 18 P. (2d) 907, we quoted with approval the following:

"The departments are distinct from each other, and,

so far as any direct control or interference is concerned, are independent of each other. More, they are superior in their respective spheres."

In the case above cited this court quoted from *State v. Cunningham*, 39 Mont. 165, 101 Pac. 962, the following:

"It is incumbent upon each department to assert and exercise all its powers whenever public necessity requires it to do so; otherwise, it is recreant to the trust reposed in it by the people. It is equally incumbent upon it to refrain from asserting a power that does not belong to it, for this is equally a violation of the people's confidence. Indeed, the distinction goes so far as to require each department to refrain from in any way impeding the exercise of the proper functions belonging to either of the other departments."

We approve and adopt the following language contained in the conclusions of the trial court:

"It is an ingrained principle in our government that the three departments of government are coordinate and shall co-operate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other. The legislative and executive departments have their functions and their exclusive powers, including the 'purse' and the 'sword.' The judiciary has its exclusive powers and functions, to-wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and duties, the courts must have complete independence. It is not only axiomatic, it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the

effective administration of justice. These principles, concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity.

"In Colorado there are repeated confirmations of the proposition that the courts have the inherent power to carry on their functions so that they may operate independently and not become dependent upon or a supplicant of either of the other departments of government, and may incur necessary and reasonable expenses in the performance of their judicial duties and, in cases such as this one, it is the plain ministerial duty of those who control the purse to pay such expenses except only where the amounts are so unreasonable as to affirmatively indicate arbitrary and capricious acts. * * * "

■ The foregoing conclusions are abundantly supported by decisions of courts of last resort in other states. *Powers v. Isley,* 66 Ariz. 94, 183 P. (2d) 880; *Bass v. County of Saline,* 171 Nebr. 538, 106 N.W. (2d) 860; *Noble County Council v. State,* 234 Ind. 172, 125 N.E. (2d) 709. We hold that the district judges of the Fourth Judicial District are empowered to fix the salaries of its employees. We further hold, in the absence of a clear showing that the acts of the judges in fixing such salaries were arbitrary and capricious and that the salaries so fixed are unreasonable and unjustified, that it is the ministerial duty of the county commissioners to approve them and to provide the means for payment of such salaries. We further hold that where a question is raised as to the reasonableness of the salaries fixed by the judges or whether their acts in respect thereto are arbitrary and capricious, the burden is on the Board to establish such facts by competent evidence. That burden was not sustained by the Board in the record before us.

Other grounds urged for reversal of the judgment, which are not covered by the foregoing, will be mentioned but briefly. It is argued (1) that the district court of El Paso county was without jurisdiction over the sub-

ject matter of the action and over the persons of the defendants because of a deprivation of procedural due process of law; (2) that the plaintiff judges are not real parties in interest and are without capacity to sue; and (3) that the plaintiff employees have a plain, speedy, and adequate remedy at law. Suffice it to say that we have examined the arguments made with relation thereto and the authorities cited in support thereof. We find the matters urged upon us as grounds for reversal to be without merit.

By way of cross error counsel for plaintiffs seek reversal of that part of the judgment which denied an award of attorneys' fees to counsel for plaintiffs. No part of the stipulated facts on which the case was submitted to the trial court touches upon the subject of attorneys' fees. If counsel fees are allowable under the circumstances disclosed by this record a claim should be filed with the proper county officials for action in due course. If such claim is rejected the propriety thereof can be made the subject of judicial action. While we affirm this judgment in the interest of a speedy determination of the issues involved, we do not determine that the procedure employed is the exclusive remedy by which enforcement of a judicial prerogative may be obtained.

As pointed out above, the judiciary, as one of the separate departments of the governmental structure, is charged with the administration of justice and must be free to perform its functions without restriction or impairment by the acts or conduct of another department. Hence a proper procedure in the circumstances shown by this record would have been for the judges involved to have certified to the Board of County Commissioners a schedule of salaries fixed for the compensation of the several clerical employees involved, whereupon it would devolve upon the Board to procure and furnish the funds to meet such schedule. In the event of its failure or refusal to do so, the court might properly issue a citation

or rule directed to the Board to show cause why an order should not be entered compelling compliance with the schedule as so certified. Unless the Board was able to establish that the schedule of salaries so fixed was wholly unreasonable, capricious and arbitrary, an order compelling compliance therewith could be entered. We do not hesitate to affirm the judgment since it is clear that had a different procedure been pursued the result here would be the same.

The judgment is affirmed.

MR. JUSTICE HALL dissents.

MR. JUSTICE HALL dissenting:

I dissent.

On December 15, 1961, three judges of the District Court of the Fourth Judicial District, to whom I refer as the judges, in their official capacities, commenced this action in their own court. They named as parties defendant the Board of County Commissioners of El Paso County, to whom I refer as the board.

The burden of the judges' complaint is that they had exercised their statutory rights and performed their statutory duties in fixing the salaries of their probation officers and clerical help. They allege that their actions "in fixing each such salary [salaries] was reasonable and necessary to maintain and efficiently operate the District Court in and for El Paso County."

They further allege that the board has arbitrarily, capriciously and unreasonably refused to approve the salaries fixed by the court, pursuant to C.R.S. '53, 39-16-1 (probation officer), which provides that the judges shall fix their salaries *subject to the approval* of the board, and 56-3-8 (clerical help), which provides that clerical help shall receive such compensation as shall be fixed by the judges and the salary *as shall be approved by the board;* that the amounts approved by the board are unreasonable.

The judges pray that a writ of mandamus be issued commanding the board to approve the salaries as fixed by the court, or show cause why they should not be approved.

For a second claim the judges allege many of the facts set forth in their first claim, and further allege:

"That the relative legal rights, powers, duties and liabilities of the Plaintiffs [the judges] and Defendants [the board] in the matter here in controversy are affected by and dependent upon the construction and validity of two statutes, namely, Colorado Revised Statutes §§ 39-16-1 and 56-3-8 (as amended)."

They pray that *their* court " * * * after finding the facts * * * construe and interpret each of said statutes, * * * declare the relative rights, powers, duties and liabilities of these parties under them, and grant the Plaintiffs * * * further * * * relief * * * and order the Defendants * * * to pay the Plaintiffs' reasonable expenses of litigation, attorneys' fees * * * ."

To this complaint the board filed several motions asserting that:

1. The judges have no real interest in the action and are not the real parties in interest;

2. The judges have no capacity or authority to bring the suit;

3. The court as a tribunal is without jurisdiction to bring an action in its own tribunal.

Prior to ruling on any of these motions, and on January 11, 1962, the judges filed their motion as follows:

"Come now the Plaintiffs, G. Russell Miller, William M. Calvert, and David W. Enoch, as the District Judges in and for the Fourth Judicial District of Colorado, by their attorneys, Jim R. Carrigan and William H. Erickson, moving this Honorable Court for an order adding Ruth M. Burns, Vera R. Bishop, Pamela Foster, Mary L. Henderson, Lee Phillips, Irene Sunde, Bernadette Marold, Mae Burk, Minnie Stafford, F. J. Livingston, Lillian

Raber, and Glenn Darby as parties plaintiff, and as grounds therefor would show * * * .

"1. That [the employees] are the individual employees and officers of the District Court * * * who have been adversely affected by the action of the Defendants [the board] in refusing to approve the salaries set [fixed] by the * * * judges * * * .

"2. That no cause of action existed in the parties named * * * until January 1, 1962, when the salaries set by the * * * Judges * * * became, or should have become, effective.

"3. That the presence of [the employees] * * * is necessary if a full determination of the issues *joined* [none were then joined] in the within action is to be made." (Emphasis supplied.)

On January 11, 1962, the same date on which the foregoing motion was filed, there was filed an amended complaint in which we find the judges and also the above named employees named as plaintiffs.

The record does not disclose that an order was ever entered, at the behest of anybody, adding the employees *as plaintiffs* in the action.

The record does not disclose that the employees ever sought to become plaintiffs or ever gave their consent to become plaintiffs, or that they ever intended to become parties plaintiff or defendant to this or any other litigation, or that they are happy or unhappy with their "fixed" and "approved" salaries.

Just how individuals become parties plaintiff in a lawsuit without their knowledge, consent or expressed intention surpasses my understanding. Here we have the employees listed as parties plaintiff, aborted into the case by the judges.

We have rules of court governing parties. Provision is made for joining as defendants, upon motion, persons who should be plaintiffs but do not choose to seek redress in the courts. I find nothing in the record, in the rules, statutes or cases which gives or purports to give

to a party plaintiff power to join his friend, enemy, neighbor, or even employee as a fellow plaintiff without authorization previously obtained from such person to be joined. In this case, however, that result, along with other innovations, appears to have been accomplished.

As I view the proceedings there are no parties to this lawsuit except the judges and the board. The effort of the judges to bring in as parties plaintiff those who have not chosen to become plaintiffs are futile and void. Individuals become parties plaintiff to a lawsuit by their own volition, not by the whim or fancy of another.

My conclusion as to a proper disposition of this matter would not be influenced by the fact that the employees are in or out of the lawsuit. However, I do wish to go on record as not sanctioning the injecting of another into litigation as plaintiff, except upon authority theretofore granted by the party to be joined as plaintiff.

From the majority opinion it would seem that the wording of the statutes involved is such as to demand that we interpret the same and determine the intention of the legislature.

In 82 C.J.S. 526, Statutes, § 311, it is said: "The purpose of all rules or maxims as to the construction or interpretation of statutes is to discover the true intention of the law, and the rules or canons of construction are merely aids for ascertaining legislative intent. * * * . *Such rules are useful only in cases of doubt; they are never to be used to create doubt, but only to remove it.*" (Emphasis supplied.)

In *McCarten v. Sanderson*, 111 Mont. 407, 109 P. (2d) 1108, the court had this to say about the word "approval":

"There is no occasion to construe the word 'approval' otherwise than in its usual and accepted sense; neither the context nor the apparent intention of the legislature justifies any such departure; and we must assume that the legislature meant to use the word in the full ordinary meaning, and not subject to the express mandatory

duty imposed on the state board of acting favorably upon all applications where the statutory requirements are met, nor as a duplication of or an advisory adjunct to, the state board's authority. The legislature found no difficulty in finding words directing the state board to issue licenses to all those found qualified under the statute; and if it had intended merely to duplicate a finding of those qualifications it could readily have directed the local authority to approve all applications, subject only to the statutory requirements. 'Approval' is the opposite of 'disapproval'; it necessarily involves discretionary power, which ordinarily is complete unless limited in some way. Since the limitation contended for does not appear in the act, either specifically or by necessary or reasonable implication, we may not read it in."

I find nothing in the pertinent statutes that requires "interpretation." The language is simple and plain. The words "fixed" and "approved" are words of common usage having a definite and accepted meaning, and in the context used are not new or novel. This statute has been on the books for forty-four years and applies not only to salaries of judicial help, but also to the salaries of help of county treasurers, assessors, clerks and superintendents of schools.

The legislative branch of the government is vested with the power and charged with the duty of providing funds for the proper functioning of government; this includes the levy and collection of taxes and the disbursement of available funds. Here the legislature delegated to the judges and the board certain authority to be by them exercised in furtherance of the over-all duties of the legislature.

Before concluding that the words used ("fixed" and "allowed") are of doubtful meaning, it would seem proper to consider the legislative history of the present statutes on the subject.

In 1890 the legislature (Laws 1891; p. 310) provided that clerks of district courts should be paid specified

salaries, payable "out of the fees of their office." In the same act the legislature provided that deputies "shall receive such compensation as *shall be allowed by such judges.*" (Emphasis supplied.)

Thus it appears that as early as 1891 the general assembly saw fit to delegate to the judges the exclusive, unfettered power to determine the salaries to be received by their deputies.

In 1899 the legislature (Laws 1899, p. 333) amended the 1891 statute changing the amounts of the salaries to be paid to clerks. No other changes were made.

In 1907 the legislature (Laws 1907, p. 561) amended the 1899 law and again changed the amounts of the salaries to be paid to clerks. No other changes were made.

In 1917 the legislature (Laws 1917, p. 226) amended the 1907 laws and for the first time provided that court clerks should be paid out of the general fund rather than out of fees of their office. Clerks' salaries were increased by the legislature which provided that "compensation of the deputy clerks * * * shall be *fixed by the judge.*" (Emphasis supplied.)

In 1919 the legislature (Laws 1919, p. 377) again amended the law and fixed the salaries of clerks of district courts in counties of the First Class, in Divisions A and B of all counties of the second class. Further amendment was made providing that in all other counties clerks should receive such annual salary as "fixed" by the judge — "But at not to exceed [specified amounts]."

In addition, the legislature very materially amended the law and provided that: "The Judges * * * may appoint * * * deputy clerks * * * at such compensation * * * as shall be *fixed by such judges with* the approval of the Board * * * ." (Emphasis supplied.)

The legislature did not state its reasons or motives for taking from the judges their previously legislative delegated privilege and duty of fixing salaries of deputies without interference, approval or control of anyone.

Possibly it intended to retain some control over the actions of the individuals to whom it had given authority, and over those charged with the duty of providing money to pay lawful claims. In any event, it sought to curtail and limit the authority previously granted to judges.

In 1949 the legislature (Laws 1949, p. 402) again amended the law concerning the salaries of deputy clerks. Provision was made for the judges to "fix" compensation *"as shall be approved by the Board * * * ."* This language replaced the former wording, " * * * *with the approval* of the Board * * * ." (Emphasis supplied.)

Though the legislature has, in 1955, 1957, and 1959, given further consideration to salary problems of the courts, it has not seen fit to abdicate, nor to relinquish control over salaries and the raising and disbursement of public funds.

By no distortion of the meaning of words can the word "disapproval" be construed to mean "approval."

The net result of the majority opinion is that salaries are to be paid in amounts fixed by the judges and "disapproved" by the board.

The plain language used, the purpose of the amended and repeated legislation, the evil to be remedied, all point to a legislative intent repugnant to that assumed by the judiciary.

The fact that the board, an arm of the legislative branch of the government, is here claiming they never had any such intention as that ascribed to them should carry some weight.

Here, for the first time in one hundred and more years, for the first time in the history of the Territory and State of Colorado, we have the judiciary dragging the legislative branch of the government into its court for the purpose of having the judiciary determine what the legislature intended in adopting certain legislation.

The majority opinion sets forth "certain well estab-

lished rules of construction" in determining legislative intent. Among other rules stated:

"(2) *it must be assumed* that the legislature acted with full knowledge or relevant constitutional provisions, *inherent judicial powers existing,* and of previous legislation and decisional law on the subject; that it did not intend to create a situation amounting to a departure from the general concept of democratic government; *and that it sought to recognize and confirm inherent powers rather than to destroy them."* (Emphasis supplied.)

Not all of the foregoing language meets with my approval.

Particularly, I protest the statement to the effect that: " * * * it must be assumed that the legislature acted with full knowledge of * * * inherent judicial powers existing, and * * * that it [the legislature] sought to recognize and confirm inherent powers rather than to destroy them."

The majority opinion quotes with approval the following from the Findings and Conclusions of the trial judge:

"In Colorado there are repeated confirmations of the proposition that the courts have the inherent power to carry on their functions * * * , and may incur necessary and reasonable expenses in the performance of their judicial duties and, in cases such as this one, it is the plain ministerial duty of those who control the purse to pay such expenses except only where the amounts are so unreasonable as to affirmatively indicate arbitrary and capricious acts. * * * ."

Here the Court is speaking of "inherent powers." I would call the powers outlined as incidental rather than inherent. Many times we have said that arms of government have such incidental powers as are reasonably necessary to perform its functions. Here the judges have the necessary help, the employees are performing their duties, and none has submitted a voucher that has not been paid, and the court has not been curtailed in the performance of its functions.

The majority states that it must be assumed that the legislature "sought to recognize and confirm inherent powers rather than to destroy them." I assume no such thing. Inherent and legislative powers are mutually exclusive; if they are inherent, they are not legislative; if they are legislative, they are not inherent.

The majority opinion points out that our government is divided into three departments, and quotes with approval from *Denver v. Lynch,* 92 Colo. 102, 18 P. (2d) 907, as follows:

"The departments [Executive, Legislative and Judicial] are distinct from each other, and, so far as any direct control or interference is concerned, are independent of each other. More, they are superior in their respective spheres."

I wholeheartedly subscribe to that language. Each department should take care of its own business and not interfere with or take over the business of another. However, in my opinion the majority do not apply this principle here — rather they say, none shall interfere with the functions of the judiciary, nor shall the judiciary interfere with the legislative branch, so long as it functions in a manner that meets with the approval of the judiciary.

In 51 Am. Jur. 71, Taxation, § 42, it is said: " * * * it is universally recognized that in the distribution of the powers of government in this country into three departments, namely, legislative, executive, and judicial, the power of taxation is peculiarly and exclusively legislative, and consequently falls to the legislature without special assignment as a part of the more general power of lawmaking. * * *."

This court has subscribed to the foregoing in *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P. (2d) 854, wherein we said:

" 'The legislature must determine all questions of state necessity, discretion or policy involved in ordering a tax and in apportioning it; must make all the necessary

rules and regulations which are to be observed in order to produce the desired returns, and must decide upon the agencies by means of which collections shall be made. The courts cannot review the determination of the legislature in regard thereto. * * * .' " — 1 Cooley on Taxation, 4th Ed., p. 169, § 67.

" 'The taxing power of the state is exclusively a legislative function, and taxes can be imposed only in pursuance of legislative authority, there being no such thing as taxation by implication. Subject to the fundamental or organic limitations on the power of the state, the legislature has plenary power on the matter of taxation, and it alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, the subjects on which the power may be exercised, and all the incidents pertaining to the proceedings from beginning to end; and the exercise of such discretion, within constitutional limitations, is not subject to judicial control. * * * .' 61 C.J., pp. 81-83, § 10."

The final order of the trial court (October 17, 1962) contains the following somewhat persuasive language:

"Now, therefore, this court * * *, do command you * * * as members of the Board of County Commissioners * * * *to allow for payment* and cause to be paid the said monthly salaries [fixed by the judges and disapproved by the board] * * * and make known * * * to this court * * * on or before * * * November 5, 1962, how you have executed this writ, * * * ." (Emphasis supplied.)

Here, we have orderly legislative procedures set up for county government. We have the board vested with powers and charged with duties to (1) approve salaries; (2) prepare a budget wherein is included anticipated costs of operation of the county government (including salaries of necessary help); (3) to levy and collect taxes in such amount as will meet the budget requirements;

(4) to audit and approve vouchers for proper charges incurred in government operations.

In this case the judiciary has invaded the exclusive domain of the legislative branch of the government. The board is under judicial mandate to perform its functions, not according to provisions of the legislative enactments, but according to directions of the court.

The legislature directed the board, as an arm of the legislative branch, to pay to county employees such salaries as it approves; the court says, you pay such salaries as we approve; the legislature told the board to annually prepare and "pass a resolution to be termed the annual appropriation resolution * * * in which said board shall appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such county."

Implicit in the decision in this case and the mandate is the direction to the board that it include in its appropriation resolution amounts fixed by the judges and disapproved by the board. Compliance with the mandate of the court requires the board to approve that which it disapproves; to audit and approve for payment vouchers which it in fact disapproves; to levy taxes in an amount that it does not sanction, and to disburse public funds in an amount in excess of that which it approves or sanctions.

In my opinion the judiciary has here not only interfered with the legislative functions — it has completely occupied the area involved.

Here we have the judiciary seeking and obtaining a judicial mandate directed to the board, presumably under Rule 106(a) and (2), R.C.P. Colo.:

"(a) * * * In the following cases relief may be obtained by appropriate action * * * :

* * *

"(2) Where the relief sought is to compel an inferior tribunal, corporation, board, officer or person to perform

an act which the law specially enjoins as a duty resulting from an office, * * * ."

The judges apparently had no difficulty in concluding that the board is inferior and proceeded accordingly. I do not consider either party as inferior; in fact, both are supreme in their respective areas — the judicial and the legislative branches of our government. Clearly the judiciary sought to and did impose its will on the board in an area in which the board is charged with the exercise of its own judgment.

In its second claim the judiciary seeks to have the judiciary construe and interpret statutes and declare the relative rights and duties of the judiciary, as provided by Rule 57, R.C.P. Colo., or C.R.S. '53, 77-11-1 to 15, which gives legislative effect to the rule. I find nothing in the rule authorizing the judiciary to institute an action seeking to have the judiciary declare the rights and duties of the judiciary. Clearly it was never intended that the judiciary be a party plaintiff in a declaratory judgment action, its part in such proceedings cannot extend beyond availability to act in such proceedings at the behest of "any person interested under a deed, will * * * or whose rights * * * are affected by a statute * * * ."

It would seem that the employees or any of them could have proceeded to have their rights under the statutes declared. As pointed out above, none of them sought the aid of the court; none are in reality parties to this litigation.

The majority opinion contains the following language to which I cannot subscribe:

"While we affirm this judgment in the interest of a speedy determination of the issues involved, we do not determine that the procedure employed is the exclusive remedy by which enforcement of a judicial prerogative may be obtained."

To state that " * * * we do not determine that the procedure employed is the exclusive remedy * * * ,"

is redundant; it is no answer to the long and loud contentions of the board that the procedures are without precedent, wrong and void.

The words "judicial prerogative" are defined by Black as: "An exclusive or peculiar privilege. The special power, privilege, immunity, or advantage vested in an official person, either generally, or in respect to the things of his office, or in an official body, as a court or legislature."

The privileges sought to be exercised by the judges here are, in my opinion, indeed *peculiar*, and to that extent the judges have brought themselves well within Black's definition.

The judiciary is often accused (and I apprehend at times with justification) of judicial legislation. Here we boldly drag the legislature before us, make a frontal attack, and with our undefined, inherent powers, and judicial prerogatives, strike down legislation in an area that this court has said (*Denver v. Lewin,* supra) is under the exlusive jurisdiction of the legislature.

I dissent and disapprove of this proceeding in its entirety.