456 P.2d 931

Beulah MANN, a widow, and Clarence Burnett, Petitioners,

v.

The COUNTY OF MARICOPA, Barney Burns, J. Robert Stark and Henry Haws, members of the Board of Supervisors, Charles Miller, County Manager, and C. M. Pifer, Personnel Director of Maricopa County, Respondents.

No. 9691.

Supreme Court of Arizona.

In Banc.

July 8, 1969.

James E. Flynn, Phoenix, for petitioners.

Moise Berger, Maricopa County Atty., by William Carter, Deputy County Atty., Phoenix, for respondents.

ROBERT O. ROYLSTON, Superior Court Judge.

Petitioners filed in this Court for a Writ of Prohibition, Mandamus, or Certiorari in the alternative. On June 3, 1969, after hearing extensive oral arguments, this Court issued an Alternative Writ of Mandamus, and continued in full force and effect the Stay Order of this Court which prevented the Respondents from terminating the employment of the Petitioners, or removing them from the payroll of Maricopa County.

The pertinent facts are as follows:

Both Petitioners have been employed for many years in the Superior Court of Arizona in Maricopa County. Petitioner Mann is a Bailiff in the Division over which Judge Laurens L. Henderson presides; Petitioner Burnett is an Adult Probation Officer in the Division over which Judge Fred J. Hyder presides. Both Petitioners have passed their seventieth birthdays. Application for continued employment after age seventy was timely filed by each Petitioner with the Respondents. Each application included a certification by each respective judge that the "employee is specially fitted by reason of long experience to perform the duties of his position." The applications were made pursuant to A.R.S. 38–759, subsec. I, which provides as follows:

"* * * Any other employee, except an employee of a political subdivision whose compensation is provided wholly or in part from state funds who is declared by law after July 3, 1955 to be a state employee for retirement purposes, who has attained age seventy and who is certified by his appointing authority as specially fitted by reason of long experience to perform the duties of his position shall, if he so desires, upon request of his appointing authority and approval of the governor, if a state employee, or approval of the governing body of the political subdivision if an employee thereof, be continued in service for such period or periods as may be requested by the appointing authority, but that no term of continued employment shall exceed one year and no more than two such terms may be approved. If employment beyond the age of seventy is extended pursuant to this subsection, no further contributions shall be made either by the employer or the employee, nor shall such continuing employee be entitled to any change in the benefits as computed at the age of seventy, except in respect of that portion of the benefit derived from his retirement account with interest accruals."

Though a series of correspondence and memoranda between the judges, the personnel director, and county manager, including an Opinion from the office of the Attorney General, it was made clear that

both applications were rejected by the Board of Supervisors, and that the Petitioners would be removed from the payroll no later than the pay period ending May 24, 1969. Each judge entered an order that the Petitioners be continued in service in their respective positions for a term of one year.

No evidence was presented in this Court indicating any reason for the Board's failing to approve the request for continued employment, other than age alone. As a result, this Petition was filed May 23, 1969.

 Respondents contend that this Court does not have original jurisdiction of this matter, and that mandamus is improper. From the balance of this opinion, it will become apparent that the Petitioners have no other adequate remedy; that an important facet of the administration of justice is concerned; and that an abuse of discretion must be corrected and controlled by mandamus; State ex rel. Corbin v. Murry, 102 Ariz. 184, 427 P.2d 135.

Although the specific relief requested is limited to a determination of whether these Petitioners shall be retained on the payroll of Maricopa County for an additional year, the actual issue is much broader and directly affects the operation of the Courts, that is: which department of government has the power of control of personnel directly connected with the operation of the Courts? The "personnel" involved herein contemplates bailiffs, probation officers, court reporters, court administrators, secretaries, and others working directly in connection with the administration of justice.

The Constitution of the State of Arizona, A.R.S., provides:

"ARTICLE III, DISTRIBUTION OF POWERS. The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

The solution to the problem has been succinctly and eloquently stated:

Courts of general jurisdiction have "the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our Courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government." Noble County Council v. State of Indiana ex rel. Fifer (1955), 234 Ind. 172, 125 N.E.2d 709.

This Court has determined the question of control in relation to court reporters, Powers v. Isley (1947), 66 Ariz. 94, 183 P.2d 880. The following determinations were made: 1. A court reporter is not a county officer but " 'a sworn officer of court.' Garcia v. State, 26 Ariz. 597, 229 P. 103." 2. The only limitation on the power of the Court to fix the reporter's salary is that it be "fixed with the approval of the Board of Supervisors," and the term "approval" means "to commend, confirm, ratify, sanction or to consent to some act or thing done by another," and in disapproving such salary, the board must act in a reasonable manner and not arbitrarily or capriciously. 3. The board of supervisors has no authority to remove a court reporter.

The reasoning of Powers v. Isley, supra, has been adopted in virtually every jurisdiction where similar problems have arisen. The Supreme Court of Nebraska quotes at great length from this case in Bass v. County of Saline (1960), 171 Neb. 538, 106 N.W.2d 860. The case is also cited as au-

thority and followed by the Supreme Court of Colorado in Smith v. Miller (1963), 153 Colo. 35, 384 P.2d 738.

Because the constitutional provision of Colorado is almost identical to that of Arizona, because the statutes involved are extremely similar, and because the Colorado Supreme Court was relying to a great extent on Powers v. Isley, supra, it would seem appropriate to quote at length from Smith v. Miller, supra, 384 P.2d at p. 740:

"Pertinent portions of the statutes which are here subject to interpretation are as follows:

" '39–16–1. The judge or judges of the district court of each judicial district shall appoint one or more probation officers who shall not be dismissed without good cause shown. The judge or judges shall fix the salary of such officers commensurate with the time required to discharge the duties hereunder, subject to the approval of the county commissioners of the counties of such judicial district. * * * '

" '56–3–8. * * * Such clerk shall receive such compensation * * * as shall be fixed by the judge or judges ·* * * as shall be approved by the board of county commissioners. * * '

"▮ Interpretation of the foregoing involves the application of certain well established rules of construction, among which we mention the following: (1) It is the legislative intention, as expressed in the statute, which the court must ascertain and declare; and (2) it must be assumed that the legislature acted with full knowledge of relevent constitutional provisions, inherent judicial powers existing, and of previous legislation and decisional law on the subject; that it did not intend to create a situation amounting to a departure from the general concept of democratic government; and that it sought to recognize and confirm inherent powers rather than to destroy them.

"Article III of the Colorado Constitution divides the powers of government into three departments and directs that, ' * * no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, * * *.' In City and County of Denver et al. v. Lynch et al., 92 Colo. 102, 18 P.2d 907, 86 A.L.R. 907, we quoted with approval the following:

'The departments are distinct from each other, and, so far as any direct control or interference is concerned, are independent of each other. More: they are superior in their respective spheres.'

"In the case above cited, this court quoted from State ex rel. Schneider v. Cunningham, 39 Mont. 165, 101 P. 962, the following:

'It is incumbent upon each department to assert and exercise all its powers whenever public necessity requires it to do so; otherwise, it is recreant to the trust reposed in it by the people. It is equally incumbent upon it to refrain from asserting a power that does not belong to it, for this is equally a violation of the people's confidence. Indeed, the distinction goes so far as to require each department to refrain from in any way impeding the exercise of the proper functions belonging to either of the other departments.'

"▮ We approve and adopt the following language contained in the conclusions of the trial court:

'It is an ingrained principle in our government that the three departments of government are coordinate and shall co-operate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other. The legislative and executive departments have their functions and their exclusive powers, including the "purse" and the "sword". The judiciary has its exclusive powers and func-

tions, to-wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and duties, the courts must have complete independence. It is not only exiomatic (sic), it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice. These principles, concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity.

'In Colorado there are repeated confirmations of the proposition that the courts have the inherent power to carry on their functions so that they may operate independently and not become dependent upon or a supplicant of either of the other departments of government, and may incur necessary and reasonable expenses in the performance of their judicial duties and, in cases such as this one, it is the plain ministerial duty of those who control the purse to pay such expenses except only where the amounts are so unreasonable as to affirmatively indicate arbitrary and capricious acts. * * *'

"██ The foregoing conclusions are abundantly supported by decisions of courts of last resort in other states. Powers v. Isley, 66 Ariz. 94, 183 P.2d 880; Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860; Noble County Council v. State, 234 Ind. 172, 125 N.E.2d 709. We hold that the district judges of the Fourth Judicial District are empowered to fix the salaries of its employees. We further hold, in the absence of a clear showing

that the acts of the judges in fixing such salaries were arbitrary and capricious and that the salaries so fixed are unreasonable and unjustified, that it is the ministerial duty of the county commissioners to approve them and to provide the means for payment of such salaries. We further hold that where a question is raised as to the reasonableness of the salaries fixed by the judges or whether their acts in respect thereto are arbitrary and capricious, the burden is on the Board to establish such facts by competent evidence. That burden was not sustained by the Board in the record before us."

Our legislature has traditionally recognized the distribution of powers as provided in Article III of the Constitution, and has further treated court personnel as being directly under the control of the judiciary. The county officers have always been designated by the legislature. They are set forth in A.R.S. 11-401, as follows:

"ENUMERATION OF OFFICERS
"A. The officers of the county are:
1. Sheriff
2. Recorder
3. Treasurer
4. School Superintendent
5. County Attorney
6. Assessor
7. Supervisors
8. Clerk of the Board of Supervisors
9. Tax Collector
10. Clerk of the Superior Court"

It is obvious that the Judge of Superior Court was specifically omitted as being in the department of the Judiciary under our Constitution.

This intent on the part of the legislature to keep the departments separate is further evident in the recently enacted bill providing for a county employee merit system. Sections 11-351 to 11-356 were added to the Arizona Revised Statutes, and A.R.S. 11-409 was amended. The system provides for dismissal, suspension, or re-

duction in rank or compensation of any appointed employee only by written order of the appointing authority filed with the Clerk of the Board of Supervisors. Provision is made for an appeal by the appointed employee to the merit system commission, and a hearing before that commission. A.R.S. 11–409, before amendment, states:

> "DEPUTIES AND EMPLOYEES; APPOINTMENT; REMOVAL
>
> "A. The county officers enumerated in § 11–401 may, by and with the consent of, and at salaries fixed by the board, appoint deputies, stenographers, clerks and assistants necessary to conduct the affairs of their respective offices. The appointments shall be in writing, and filed in the office of the county recorder.
>
> "B. Deputies shall hold office at the pleasure of the officer appointing them. Deputies appointed by and with the advice and consent of the board of supervisors may be removed by the board or by the officer appointing them."

The amendment removes section B, thereby taking the sole power of dismissal from the appointing officer and substituting the merit system procedure.

It is also obvious that the merit system does not apply to court personnel, since A.R.S. 11–409 refers only to the officers enumerated in § 11–401, which section, as stated above, specifically excludes the Judge of Superior Court, thereby keeping the department of the Judiciary completely separate. It then follows that the Judiciary has the power of control over the personnel directly connected with the Courts.

Therefore, the issues as stated must be determined as follows:

■ 1. The department of government which has the power of control of personnel directly connected with the operation of the Courts is the Judicial Department.

■ 2. The Judges of the Superior Court had the right to request that Petitioners be continued in service for a period of one year, as provided in A.R.S. 38–759, subsec. I, as amended.

3. The Board of Supervisors had the ministerial duty of approving the requests, unless there is a clear showing that the judges acted unreasonably, arbitrarily, and capriciously in making the request.

As hereinbefore stated, the record is devoid of any evidence that the Judges of the Superior Court acted unreasonably, arbitrarily, and capriciously.

The alternative writ is made permanent.

UDALL, C. J., and STRUCKMEYER, McFARLAND and HAYS, JJ., concur.

Note: Vice Chief Justice LORNA E. LOCKWOOD did not participate, therefore the Honorable ROBERT O. ROYLSTON of Pima County was called to sit in the determination of this matter.