673 P.2d 341

Faustino **HERNANDEZ** and Frances Hernandez, husband and wife, Plaintiffs-Appellants,

v.

**MARICOPA COUNTY,** a political subdivision of the State of Arizona; David Lee Phares, Chandler Justice of the Peace; and Jane Does I–IV, individually and in their official capacities, Defendants-Appellees.

No. 1 CA–CIV 6744.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 8, 1983.

---

1. In fact, it has since done so, A.R.S. § 28–692.-01(B) was amended in 1983 to read:

"B. A person who is convicted of a violation of § 28–692 is guilty of a class 1 misdemeanor and shall be sentenced to serve not less than twenty-four consecutive hours in jail. The judge shall order the person to pay a fine of not less than two hundred fifty dollars and may order the person to perform not less than eight nor more than twenty-four hours of community service. In addition, the judge shall require the surrender to him of any operator's or chauffeur's license of the convicted person and shall forward the license to the department with the abstract of conviction, together with an order of the court suspending the driving privileges of the person for a period not less than ninety days. The court shall notify the person in open court of the effective dates of the suspension, and the suspension is effective as of the dates listed in the court's order. Notwithstanding § 28–446, no further notice is required. A judge shall not grant probation to or suspend any part or all of the imposition or execution of any sentence required by this subsection except on the condition that the person's license is suspended for not less than ninety days and that the person serve not less than twenty-four consecutive hours in jail and pay a fine of not less than two hundred fifty dollars. The court may require the person to attend traffic safety or alcohol abuse classes at the offender's expense or, if in the court's opinion the offender has the problem of habitual abuse of alcohol or drugs, the court shall require the person to obtain treatment under its supervision; however, in no case shall an offender be excused from spending twenty-four consecutive hours in jail."

Manuel S. Silvas, Phoenix, for plaintiffs-appellants.

Thomas E. Collins, Maricopa County Atty. by Louis Barry Gorman, Deputy County Atty., Phoenix, for defendants-appellees.

## OPINION

CONTRERAS, Presiding Judge.

The sole issue on this appeal is whether a county can be held liable for the alleged negligence of a justice of the peace and his staff under the doctrine of respondeat superior. In the context of the case before us we hold that a county cannot be held liable and therefore affirm the summary judgment.

This litigation arose from the following facts which are not in dispute. During June, 1980, Faustino Hernandez was cited for speeding. On June 16, 1980, Hernandez appeared before Justice of the Peace David Lee Phares and paid a $34.00 fine on the speeding ticket. Through clerical or administrative error, the receipt of the $34.00 was not noted on the back of the traffic ticket. Consequently, during a subsequent review of all unpaid and delinquent traffic tickets, Hernandez' ticket appeared. Justice of the Peace Phares reviewed the file and determined that the fine had not been paid and issued a bench warrant for failure to pay the fine. Justice of the Peace Phares also signed a complaint charging Hernandez with failure to appear.

On September 24, 1980, when Hernandez was stopped for a minor traffic violation, the officer who stopped him ascertained that there was an outstanding bench warrant. As a result, Hernandez was arrested and incarcerated overnight in the Chandler City Jail. The following morning, Hernandez appeared before Justice Phares and the clerical error was discovered and corrected. Apologies were made and Hernandez was released.

Hernandez filed a complaint in Maricopa County Superior Court on September 10, 1981, against Maricopa County, Justice of the Peace Phares and three Chandler justice court clerks. Thereafter, Hernandez filed an amended complaint seeking to recover damages on alternative bases of false arrest and negligence. The defendants filed a motion to dismiss or in the alternative, motion for summary judgment urging that (1) the bench warrant was valid on its face, (2) Justice of the Peace Phares was immune under the doctrine of judicial immunity (3) Justice of the Peace Phares' clerks were also immune from civil liability under the doctrine of judicial immunity, and (4) the doctrine of respondeat superior cannot be employed to impute liability to Maricopa County. Following Hernandez' written response and oral argument on the motion, the trial court granted summary judgment in favor of all defendants. Hernandez filed a timely notice of appeal.

Hernandez has raised a narrow issue on appeal. He argues that even if Justice of the Peace Phares and his staff are immune from suit because of judicial immuni-

ty, Maricopa County can nevertheless be held liable under the doctrine of respondeat superior. We disagree. When imposition of liability is sought upon the basis of respondeat superior, the failure to prove liability on the servant or agent normally prevents liability from attaching to the master or principal. However, Hernandez argues, this is not necessarily the rule where the agent or servant is not liable "because of an immunity." *See* Restatement (Second) of Agency § 217 Comment b (1958). *See, e.g., Brumbaugh v. Pet Inc.,* 129 Ariz. 12, 13–14, 628 P.2d 49, 50–51 (App.1981). Hernandez' argument continues that "it cannot be gainsaid that a J.P. is an employee or agent of the county for which he works; there would be no point in citing authority for this point. If it is contested in the answering brief, it will be discussed in the reply brief."

We first note that no reply brief has been filed in this matter. We further note that it is initially necessary to distinguish between the doctrine of judicial immunity and the doctrine of sovereign immunity. In *Ryan v. State of Arizona,* 134 Ariz. 308, 656 P.2d 597 (1982) our Supreme Court noted the distinction between the doctrine of sovereign immunity (which has been abolished) and judicial immunity (which still obtains):

> In electing to treat the state like a private litigant, we must hasten to point out that certain areas of immunity must remain. The more obvious of such immunities are ... judicial immunity....

134 Ariz. at 310, 656 P.2d at 599.

While acknowledging that a justice of the peace along with his or her clerks are immune from liability under the doctrine of judicial immunity, Hernandez nonetheless asserts that a justice of the peace and clerks are employees or agents of the county and therefore liability can be imputed to the county. Contrary to Hernandez' unsupported conclusion, there is substantial authority to support the proposition that a justice of the peace is not an employee or agent of the county. Appellate courts have on numerous occasions described the independence of the judiciary based upon the constitutional doctrine of the separation of powers and the lack of a principal-agent relationship between elected officials and other governmental bodies.

Article III of the Arizona Constitution provides that the powers of government of the State of Arizona shall be divided into three separate departments i.e., legislative, executive and judicial. It further provides that no one of such departments shall exercise the powers properly belonging to either of the others. Article VI, § 1 of the Arizona Constitution creates the judicial branch of government which includes justices of the peace. In analyzing the scope of these constitutional provisions, the Arizona Supreme Court had occasion to discuss the independence of the superior court and its personnel from the county in *Mann v. County of Maricopa,* 104 Ariz. 561, 456 P.2d 931 (1969). The court quoted at length *Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963), noting that Colorado's constitutional provision with respect to separation of powers is almost identical to Arizona and stating:

> "The departments are distinct from each other, and, so far as any direct control or interference is concerned, are independent of each other."

> \*　　\*　　\*　　\*　　\*　　\*

> "In their responsibilities and duties, the courts must have complete independence. It is not only exiomatic (sic), it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source."

104 Ariz. at 564–565, 456 P.2d at 934–935 (quoting *Smith v. Miller,* 153 Colo. at 39–40, 384 P.2d at 741).

The court went on to state:

> Our legislature has traditionally recognized the distribution of powers as provided in Article III of the Constitution, and has further treated court personnel as being directly under the control of the judiciary.

> \*　　\*　　\*　　\*　　\*　　\*

> The department of government which has the power of control of personnel directly

**146**

connected with the operation of the Courts is the Judicial Department.

104 Ariz. at 565–566, 456 P.2d at 935–936. *See also Broomfield v. Maricopa County,* 112 Ariz. 565, 544 P.2d 1080 (1975); *Roylston v. Pima County,* 106 Ariz. 249, 475 P.2d 233 (1970); *Birdsall v. Pima County,* 106 Ariz. 266, 475 P.2d 250 (1970).

■ Justice of the peace courts, like the superior court, are part of the judicial department and thus they are not under the control of the executive branch of government. In *Yamamoto v. Santa Cruz County Board of Supervisors,* 124 Ariz. 538, 606 P.2d 28 (App.1980), Division Two of this court ruled that the Board of Supervisors of Santa Cruz County had no right to control the activities of the justice of the peace, the clerk of the justice of the peace, the Santa Cruz County Superior Court or the clerk of that superior court. The court specifically found that there was no master-servant relationship between the county and these officials and held that the doctrine of respondeat superior could not be employed to impute liability to Santa Cruz County. The court stated:

> The only acts alleged in the tort counts were those of the clerk and her deputy, and the justice of the peace. Their duties are imposed by law, not by the county. Having no right of control over either, the county cannot be liable for their torts under the doctrine of respondeat superior. See *Fridena v. Maricopa County,* 18 Ariz. App. 527, 504 P.2d 58 (1972).

124 Ariz. at 540, 606 P.2d at 30. *Cf. Moore v. Maricopa County,* 11 Ariz.App. 505, 509, 466 P.2d 56, 60 (1970).

An additional basis for holding that the doctrine of respondeat superior is inapplicable to the relationship between a county and a justice of the peace is set forth in *Fridena v. Maricopa County,* as follows:

> When duties are imposed upon a county treasurer, or upon a board of county commissioners by law rather than by the county, the latter will not be responsible for their breach of duty or for their nonfeasance or misfeasance in relation to such duty. Furthermore, where the duties delegated to officers elected by public corporations are political or governmental, the relation of principal and agent does not exist and the maxim "respondeat superior" does not govern.

18 Ariz.App. at 530–531, 504 P.2d at 61–62 [Quoting 57 Am.Jur.2d, *Municipal, School, and State Tort Liability* § 86 at 97–98 (1971).]

The duties of Justice of the Peace Phares who is an elected official are imposed by the Arizona Constitution and by statutes. *See* Ariz. Const. Art. VI, § 1; A.R.S. §§ 22–201 *et seq.* Maricopa County has no power to control the implementation and execution of those duties. There is, therefore, no master-servant or principal-agent relationship between these separate branches of government. Consequently, the doctrine of respondeat superior cannot be invoked to impute liability to Maricopa County for the acts of Justice of the Peace Phares and his staff.

The judgment of the trial court is affirmed.

FROEB and OGG, JJ., concur.