*TUBA CITY JUDICIAL DISTRICT of the Navajo Nation*
Appellant-Respondent
*vs.*
*Cecelia SLOAN*
Appellee-Petitioner

In the Supreme Court of the Navajo Nation

**No. SC-CV-57-97**

September 7, 2001

James W. Zion, Esq., Window Rock, Navajo Nation (Arizona), for Appellant.

Henry S. Howe, Esq., Gallup, New Mexico, for Appellee.

Before AUSTIN, Acting Chief Justice, and SLOAN and HOLGATE, Associate Justices.

Opinion delivered by SLOAN, Associate Justice.

The Tuba City Judicial District ("District") appeals from a decision of the Navajo Nation Labor Commission ("Commission"), which found the District liable for violations of the Navajo Preference in Employment Act ("NPEA") for its removal of Cecelia Sloan ("Sloan") from her position as Managing Probation Officer.

At the request of the District, we bifurcated this appeal. In this opinion we address whether the Commission's exercise of personal jurisdiction over the District and its exercise of subject matter jurisdiction over Sloan's labor complaint violate the separation of governmental powers doctrine, judicial independence under the Navajo Nation Judicial Reform Act of 1985, and the Title II Amendments of 1989. We affirm the Commission's decision on the jurisdictional issue.

I

The District hired Sloan as a probation officer in 1989. In December of 1992, the Chief Justice of the Navajo Nation issued Administrative Order No. 95-92, which delegated to the presiding judge or judges of each judicial district the authority of either appointing a managing probation officer or using the district court administrator to supervise the local probation offices. Pursuant to this administrative delegation, the District, through its presiding judge, appointed

Sloan as the "managing probation officer," and allocated to her supervisory and managerial responsibilities over the District's probation office and personnel. In January of 1996, the judges of the District reorganized the probation office, bringing supervision and management of the office under the district court administrator. The District notified Sloan that she was no longer the "managing probation officer" due to the reorganization.

Believing the District's actions to constitute adverse personnel action, Sloan filed a grievance with the Judicial Branch Grievance Board which ultimately ruled against her. Sloan then filed her claim with the Commission which, over the District's objections, assumed jurisdiction and heard the merits of Sloan's complaint. The Commission found that the District's actions constituted unjust removal of Sloan from her managing probation officer position, and entered judgment against the District. This appeal followed.

## II

The Navajo Nation government is comprised of three co-equal branches, each with its own area of responsibility and limitations of power. The Judicial Branch was originally created as a separate branch in 1959. Navajo Tribal Council Resolution NOS. CO-69-58, Sec. 1 (October 16, 1958) and CJA-5-59, Sec. 1 (January 9, 1959) (effective April 1, 1959 and codified at Title 7 of the Navajo Nation Code). It was later reestablished as a separate branch by the Navajo Nation Judicial Reform Act of 1985. Navajo Nation Council Resolution No. CD-94-85 (December 4, 1985) (codified as Title 7 of the Navajo Nation Code). At that time, the Navajo Nation government operated as a two-branch government: the Legislative and Judicial Branches. Under that scheme, the Navajo Tribal Council controlled both the legislative and executive functions of government. The Chairman of the Navajo Tribal Council was the chief legislative officer as well as the chief executive officer. This unilateral control left no room for the exercise of checks and balances. This resulted in unchecked abuses of power and eventually to what is now known as the "1989 Crisis."

From the experiences of the 1989 Crisis and in recognition of the fundamental flaw in this two-branch design, the Navajo Nation Council undertook the Title II Amendments which separated governmental powers into three separate and equal branches. "The lack of definition of power and separation of legislative and executive functions ... also allowed the legislative body to overly involve itself in the administration of programs thereby demonstrating the need to limit the legislative function to legislation and policy decision making and further limit the executive function to implementation of laws and representation of the Navajo Nation." Preamble of Resolution No. CD-68-89, Par. 3. The Title II Amendments redistributed governmental powers among the Legislative, Executive and Judicial Branches. 2 N.N.C. § 1. The Title II Amendments, along with the Navajo Nation Bill of Rights and the Judicial Reform Act of 1985, are fundamental, organic laws, which are superior to any conflicting law. *See Bennett v. Navajo Board*

*of Election Supervisors*, 6 Nav. R. 319 (Nav. Sup Ct. 1990).

In the statement of the purposes of the Title II Amendments, the legislature made clear its intent to establish three separate branches of government in order to decentralize power, limit the functions and powers of each branch, and provide for checks and balances among the branches. Preamble of Navajo Nation Council Resolution No. CD-68-89, Par. 8. The principles of separation of powers and checks and balances were the catalyst that moved the Council to reorganize the Navajo Nation government; thus, these principles are fundamental to Navajo governmental operations. The leaders who debated and enacted the Title II Amendments were adamant that the reorganized government would function according to principles of separation of powers and checks and balances. *See* Transcript of Tribal Council Session, Dec. 13–15, 1989. Notably, while the Title II Amendments describe the legislative and executive functions of government in detail, they make little mention of the Judicial Branch, except to say that it is a separate branch of government. This lack of reference was not because of the Judicial Branch's lack of importance, but because it was recognized that the Judicial Branch has been independent since 1959.

The government of the Navajo Nation belongs to the Navajo people.[1] A government cannot operate effectively unless the citizenry has confidence in its government. Public confidence comes when citizens believe that their government can protect them from tyranny and from violations of their rights. Even the least aware among us know that those who hold powerful government positions are not always trustworthy and honorable. Even the most honorable politician or administrator can experience lapses of sound judgment. Our legislators recognized these shortcomings in 1989. The separation of powers and checks and balances contained in our government provide mechanisms for addressing corruption, abuses of discretion, and lapses of judgment. They prevent each branch from exercising unfettered discretion. We therefore conclude that the Commission's exercise of jurisdiction in this case was proper.

### III

Separation of functions is a concept that is so deeply-rooted in Navajo culture that it is accepted without question. It is essential to maintaining balance and harmony. For instance, a Navajo medicine man or woman will perform his or her ceremony in a certain way. The manner in which a ceremony is conducted is left to the medicine man or woman performing the ceremony, guided by the holy people. It is not acceptable for one medicine person to tell another how to conduct a ceremony. Any infringement destroys the healing powers of the ceremony. Thus, the prohibition on such intrusions is absolute. Also, when a medicine man or woman oversteps his or her authority and does not perform a ceremony properly, that ceremony is ruined irreparably. The same holds true with our three-branch government. If one branch oversteps its powers, and infringes on

---

[1] This is a concept that is self-evident and intuitive. It is also reflected in the Navajo Nation Code at 1 N.N.C. § 553(E).

the role of another branch, the integrity of the government is ruined. In Navajo society, the integrity of the government is the key to its viability. If the governed cannot trust that their government is essentially just and accountable, then there arises widespread belief that the government benefits only a few.

There are certain circumstances in which the prohibition against infringement by one branch into the workings of another is absolute. No branch of the Navajo Nation government can perform or infringe on the essential functions of another branch. For instance, the judiciary absolutely may not infringe upon the Council's essential function of enacting legislation. Our courts cannot make statutory law. They are limited to interpreting those laws as passed by the Council. Conversely, the Council absolutely may not act as an appellate body over the judgments of the courts, nor can it pass legislation for the specific purpose of altering a party's court-granted right.

One of the basic tenets which derives from the doctrine of separation of powers is judicial independence. The judiciary's function is to render judgments and to enforce its judgments and orders. No other branch or office of the government may legally interfere with the judiciary's duty to render judgments and enforce judgments in any way. Likewise, no other branch, office, or entity of the government may influence a court with the intent of altering its decision. Outcomes of cases that are before the courts must be free of any form of political influence. *In re Excusal of Judge Lorene Ferguson In the Case Tome, et al. v. Marshall, et al.*, 7 Nav. R. 320 (Nav. Sup Ct. 1998). Justice for the Navajo people means the courts' decisions must be free of influence or pressure from the Executive and Legislative Branches.

Although this opinion interprets Navajo Nation laws, we agree with the spirit of the holding of the Supreme Court of Arizona in *Mann v. Maricopa*, 104 Ariz. 561, 456 P.2d 931 (1969), which interpreted the constitution of the State of Arizona. In particular, we find the following language instructive:

> It is an ingrained principle in our government that the three departments of government are coordinate and shall co-operate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other. The legislative and executive departments have their functions and their exclusive powers, including the 'purse' and the 'sword.' The judiciary has its exclusive powers and functions, to-wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and duties, the courts must have complete independence. It is not only exiomatic (sic), it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate

department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice. These principles, concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity. 104 Ariz. at 564-565.

## IV

Indeed, concerns about abuse of power cannot be adequately resolved by the separation of powers doctrine alone. Checks and balances are equally important in the operations of government. Checks and balances promote accountability within each branch by preventing abuses of discretion and power. In 1989, the Tribal Council recognized that checks and balances must exist between the branches of the government. Preamble of Navajo Nation Council Resolution No. CD-68-89, Par. 8. While the three branches remain separate, they exercise certain review functions over one another. These checks and balances are evident throughout the Title II Amendments. For instance, oversight committees (legislative entities) of the Council monitor, coordinate, and oversee the activities of the non-legislative branches. 2 N.N.C. § 341 and 2 N.N.C. § 571. The Budget and Finance Committee (legislative entity) reviews and recommends to the Council the proposed budgets for all branches (including the Judicial Branch) and entities of the Navajo Nation. 2 N.N.C. § 374. All proposed resolutions of the Council or its committees (including the Judiciary Committee) must follow a process by which they are reviewed and signed by representatives of at least two of the branches. 2 N.N.C. § 164. Checks and balances are as fundamental to the Navajo Nation government as is the doctrine of separation of powers.

## V

With the foregoing background in place, we now address the question of whether the application of the NPEA to the Judicial Branch, including permitting an administrative body to review employment claims of Judicial Branch employees, violates the principle of separation of powers and judicial independence. We believe that it does not.

It is important to note that the judiciary has a great deal of administrative functions which support its essential function of deciding cases. For instance, the Judicial Branch operates various divisions and departments, including the peacemaker division, probation services, branch administration, and district administration. A great deal of administrative and technical support is necessary to operate the courts so that they may perform their essential function. The Branch must employ court clerks, probation officers, court administrators, computer service personnel, secretaries, and others to assist the judges and justices in rendering judgments and enforcing their judgments and orders.

The District argues that the application of the NPEA to the Judicial

Branch is an impermissible violation of the separation of powers and judicial independence doctrines, because it permits an administrative body to interfere with the operation of the courts. In fact, the District's position seems to be that any activity that has an effect on the administrative operations of the Judicial Branch is illegal.[2] We do not agree. Such activities are illegal only when they interfere with a court's duty to hear and decide cases independently. The Judicial Branch must be unfettered in its performance of its duty to administer justice. In order to fulfill that responsibility, the Judicial Branch must have the power to control personnel who operate the courts, but that power can be checked to some degree. It may be checked only to the extent that administration of justice is not threatened.[3] We believe that the application of the NPEA to the Judicial Branch does not interfere with the judiciary's essential duty to hear and decide cases, nor does it impermissibly influence a court's decision making. It does not threaten the administration of justice but instead provides a check on the discretion of the Judicial Branch in its treatment of its employees.

The Commission is an administrative body created by the Legislative Branch of the Navajo Nation government. 15 N.N.C. § 301. Its function is to review employment claims that allege violations of the NPEA by all employers, including those arising from all three branches of government. 15 N.N.C. § 302. Decisions of the Commission are appealable directly to this Court. 15 N.N.C. § 613. The NPEA regulates employment practices evenly and requires all employers on the Navajo Nation to treat their employees fairly. Although the NPEA provides the Office of Navajo Labor Relations and the Commission with investigative and adjudicatory jurisdiction over employers, the Judicial Branch, through the Supreme Court, has the ultimate authority to decide whether the employer has complied with the NPEA. The NPEA merely permits an administrative body to check possible abuses of power or discretion that might occur with regard to employment matters within the Judicial Branch. Likewise, the Judicial Branch is permitted to check alleged abuses of power within other branches of government, by virtue of its final review role granted by the NPEA. We decline to interpret the NPEA in a way that would permit the Judicial Branch to prohibit checks on its own alleged abuses of power or lapses of judgment.

Finally, the District argues that the NPEA cannot be applied to the Judicial Branch as an employer because the Branch is not specifically listed in 15 N.N.C. § 603(C) as an "employer." The NPEA defines the term "employer" as "all persons, firms, associations, corporations, and the Navajo Nation and all of its agencies and instrumentalities...." 15 N.N.C. § 603(C). The District argues that the legislature would have included "branches of the Navajo Nation" in the list

---

2 The District's arguments do not discuss checks and balances.

3 For instance, administration of justice might be genuinely threatened if the Commissionrs decisions were not appealable to the Navajo Nation Supreme Court. Or there may be a genuine threat to administration of justice if a legislature denied funds to pay a court employee whose work is necessary to the operation of the courts. *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992).

if it had intended for the NPEA to apply to the Judicial Branch. The District fails to note that "the Navajo Nation" is included in the list. The 1985 Judicial Reform Act (codified as Title 7 of the Navajo Nation Code) specifically reconstituted the Judicial Branch as the 'Judicial Branch within the Navajo Tribal Government." 7 N.N.C. § 201 (1985) (emphasis added). Since the Judicial Branch is an integral part of the Navajo Nation, there was no need for the Council to further identify every branch and form of organization within the Navajo Nation in the NPEA. Further, section 603(K) supplements the definition of "person" as it is included within the definition of "employer." Section 603 (K) defines "person" as:

> individuals; labor organizations; tribal, federal, state and local governments, their agencies, subdivisions, instrumentalities and enterprises; and private and public, profit and non-profit, entities of all kinds having recognized legal capacity or authority to act, whether organized as corporations, partnerships, associations, committees, or in any other form.

This definition is clearly intended to encompass all entities that engage in employment practices, including branches of the Navajo Nation government.

## VI

For the reasons explained above, we hold that the application of the Navajo Preference in Employment Act to the Judicial Branch does not violate the principles of separation of powers and judicial independence under the Navajo Nation Judicial Reform Act of 1985 and the Title II Amendments of 1989. We will hold further proceedings to address the remaining issues.